**UNITED STATES of America, Appellant,**

v.

**Frank CACCIATORE and 1463 Restaurant Corporation, Appellees.**

**No. 354, Docket 73–2265.**

United States Court of Appeals, Second Circuit.

Argued Oct. 5, 1973.

Decided Nov. 14, 1973.

Michael C. Eberhardt, Sp. Atty., Dept. of Justice, New York City (Paul J. Curran, U. S. Atty., John D. Gordan III, John W. Nields, Jr., Asst. U. S. Attys., and Edward M. Shaw, Sp. Atty., Dept. of Justice, New York City, on the brief), for appellant.

Irving Anolik, New York City, for appellees.

Before HAYS, FEINBERG and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

On this appeal from an order entered in the Southern District of New York by Lloyd F. MacMahon, *District Judge,* on August 17, 1973 dismissing an indictment, which had been returned July 3, 1973, "for failure to prosecute and for denial of a speedy trial", the sole issue is whether the district judge abused his discretion in ordering the government to proceed to trial the day after the only pretrial conference and in dismissing the indictment two days later when the government was unable to proceed because of the unavailability of its witnesses. We hold on the facts of this case that the judge did abuse his discretion. We reverse and remand for trial.

On July 3, 1973, a two count indictment was returned. It charged defendant Frank Cacciatore with offering a bribe to a Treasury Department agent in violation of 18 U.S.C. § 201(b)(3) (1970). It charged Cacciatore and defendant 1463 Restaurant Corporation (Cacciatore's employer) with illegally refilling liquor bottles in violation of 26 U.S.C. §§ 5301(c)(2) and 5606 (1970).

On July 23, Cacciatore (who had been arrested on March 23 and released on his own recognizance by a United States Magistrate) pleaded not guilty before Judge Ward who allowed ten days for the filing of motions and continued Cacciatore's release on his own recognizance.

In due course the case was assigned on July 31 to Judge MacMahon who notified both sides on August 6 that a pretrial conference would be held on August 14.

Also on August 6, the government served and filed its Notice Of Readiness For Trial, stating that it would be ready for trial "as soon as the matter can be reached by the Court on or after September 1, 1973 subject to receiving five days' advance notice of the actual date for trial." Later, when the government realized that September 1 fell on a Saturday, it informed Judge MacMahon that it would be ready for trial on August 30 or 31.

The pretrial conference was held on Tuesday, August 14, at 3:30 P.M. It

was brief. Defendants' counsel first informed Judge MacMahon that the corporate defendant had not yet entered a plea. The judge said that its plea of not guilty could be entered on the morning of the trial. The judge then stated that he would like to proceed with the trial the following morning, August 15. Government counsel reminded the judge that, in accordance with its Notice of Readiness, the government had indicated that it would be ready as of September 1 and requested that the trial be put off until then. Defendants' counsel informed the judge that for personal reasons he would be unable to proceed to trial on August 15 or 16. Judge MacMahon then ordered that the trial begin on Friday, August 17, at 10 A.M.

Immediately after the pretrial conference on August 14, government counsel attempted to locate his witnesses. Of the four witnesses essential to the government's case, three (including a New York City Police Detective) were on annual leave and could not be reached; the fourth, a Treasury Department agent, was scheduled to enter a hospital for urgent kidney surgery on August 19. These facts were communicated to Judge MacMahon orally and later were confirmed by affidavits submitted on August 16. On the same day, in chambers, government counsel again requested that the trial be rescheduled because of the unavailability of the government's witnesses. The judge declined to do so and stated that he would dismiss the indictment if the government did not produce its witnesses the following morning.

On Friday, August 17, at 10 A.M., counsel for both sides appeared before Judge MacMahon. The government filed a written motion for an adjournment of the trial, supported by an affidavit setting forth the essential facts regarding the unavailability of its wit-

nesses. The government made it clear that it would be ready to proceed to trial on August 30 or 31, or as soon thereafter as would be convenient to the court. While defendants' counsel said he was ready, he did not suggest that the indictment should be dismissed until the judge expressly invited such a motion "for failure to grant this defendant a speedy trial." Defendants' counsel then said, "I so move, your Honor." The motion was granted.

Later that day, Judge MacMahon filed a memorandum opinion stating the reasons for his action and concluding that "the government's application for an adjournment is denied, and the defendants' motion to dismiss the indictment for failure to prosecute and for denial of a speedy trial, in accordance with their constitutional rights, is in all respects granted."

The government promptly filed a notice of appeal on August 28, pursuant to 18 U.S.C. § 3731 (1970). On August 31, we ordered an expedited appeal and heard it on October 5.

 We reject out of hand the assertion that defendants were denied their Sixth Amendment right to a speedy trial. Upon the uncontroverted facts of the instant case, none of the four factors articulated by the Supreme Court in Barker v. Wingo, 407 U.S. 514, 530 (1972), would in any way support such a claim.

We turn next to the claim that dismissal of the indictment was justified by the government's alleged failure to comply with the Southern District's "Plan For Achieving Prompt Disposition Of Criminal Cases" ("the Plan"), promulgated pursuant to Fed.R.Crim.P. 50(b) and made effective April 1, 1973. Since no defendant here was detained, under paragraph 4 of the Plan [1] the govern-

---

1. Paragraph 4 of the Southern District Plan provides as follows:
 "4. *All Cases: Trial Readiness and Effect of Non-Compliance.*
 In all cases the government must be ready for trial within six months from the date

of the arrest, service of summons, detention, or the filing of a complaint or of a formal charge upon which the defendant is to be tried (other than a sealed indictment), whichever is earliest. If the government is not ready for trial within such

ment was required to be "ready for trial within six months from the date of the arrest . . . or the filing of . . . a formal charge . . . whichever is earliest." The government's Notice of Readiness stating that it would be ready on or after September 1, 1973 (later modified to August 30 or 31) fully complied with the six months provision of the Plan. As to Cacciatore who was arrested March 23, 1973, the government stated that it would be ready within slightly more than five months. As to the corporate defendant which was indicted July 3, 1973, the government stated that it would be ready within less than two months.[2]

Appellees, as well as the district court in its opinion below, stress paragraph 9(a) of the Plan.[3] This provision places sole responsibility on the district court for setting cases for trial; imposes on counsel for both sides the burden of calling matters to the court's attention

---

time, and if the defendant is charged only with non-capital offenses, the defendant may move in writing, on at least ten days' notice to the government, for dismissal of the indictment. Any such motion shall be decided with utmost promptness. If it should appear that sufficient grounds existed for tolling any portion of the six-months period under one or more of the exceptions in [paragraph 5], the motion shall be denied, whether or not the government has previously requested a continuance. Otherwise the court shall enter an order dismissing the indictment with prejudice unless the court finds that the government's neglect is excusable, in which event the dismissal shall not be effective if the government is ready to proceed to trial within ten days."

Paragraph 4 tracks the language of former Rule 4 of the Second Circuit Rules Regarding Prompt Disposition of Criminal Cases, 28 U.S.C.A. App. (Supp. 1973), promulgated January 5, 1971 and made effective July 5, 1971. During the period of more than two years since the Second Circuit Prompt Disposition Rules became effective, Rule 4 (the counterpart of paragraph 4 of the Southern District Plan) has been the subject of numerous decisions in our Court. See, e. g., cases cited in United States v. Scafo, 480 F.2d 1312, 1313 n. 1 (2 Cir.), cert. denied, —— U.S. ——, 94 S.Ct. 378, 38 L.Ed.2d 250 (1973) ; see also United States v. Rollins, 487 F.2d 409 (2 Cir. 1973), slip op. 5523 (October 31, 1973).

2. Appellees, as well as the district court below, repeatedly assert that "prompt disposition" of criminal cases means that the trial must begin within sixty days after indictment.

There is no such provision in the Southern District's "Plan For Achieving Prompt Disposition Of Criminal Cases".

The district court below referred to the Report of the Proceedings of the Judicial Conference of the United States, Washington, D. C., October 28–29, 1971. The Judicial Conference on October 29, 1971 adopted the report of its Committee On Court Administration (pp. 70–74), including the following :

" 'Prompt Disposition' means ordinarily not more than sixty days total elapsed time from date of filing to date of trial, . . ." Id. at 74.

Whatever the merits of this recommendation of the Judicial Conference, the fact remains that it has never been implemented by the District Court for the Southern District of New York by rule or otherwise—as likewise certain other recommendations of the same session of the Judicial Conference have never been implemented by the Southern District. See United States v. Griesa, 481 F.2d 276, 279 n. 1 (2 Cir. 1973) (Timbers, J., concurring-dissenting).

Moreover, despite the foregoing, the government did inform the district court in the instant case that it would be ready for trial within less than sixty days from the date of the indictment.

3. Paragraph 9(a) of the Southern District Plan provides as follows :

"9. *Responsibility of United States Attorney and Defense Counsel.*

(a) The court has sole responsibility for setting and calling cases for trial. Neither a conflict in schedules of Assistant United States Attorneys nor a conflict in schedules of defense counsel will be ground for a continuance or delayed setting except under unusual circumstances approved by the court and called to the court's attention at the earliest practicable time. Each judge will schedule criminal trials at such times as may be necessary to assure prompt disposition of criminal cases. The United States Attorney will familiarize himself with scheduling procedures of each judge and will assign or reassign cases in such manner that the government will be able to announce ready for trial."

Paragraph 9(a) had no counterpart in the Second Circuit Prompt Disposition Rules, *supra* note 1. This provision first appeared in the district court plans which became effective April 1, 1973.

which bear upon scheduling of cases for trial; requires the United States Attorney to familiarize himself with the scheduling procedures of each judge; and directs the court to schedule trials so as to assure prompt disposition.

Here it is true that on August 6, when government counsel received the notice of a pretrial conference to be held August 14, he knew that one of his four witnesses was scheduled to go on annual leave on August 13 and that another was scheduled to enter the hospital on August 19. Government counsel should have communicated that information promptly to the judge so that one of several alternatives might have been utilized to accommodate the government's witnesses and still have permitted an expeditious trial. Government counsel with commendable candor informed us at oral argument that he had had no prior experience with Judge MacMahon's scheduling procedures and did not anticipate that he would be ordered to trial within less than 24 hours of the pretrial conference. Under these circumstances, we decline to hold that the government, in requesting a two week adjournment, usurped the court's sole responsibility for setting and calling cases for trial.

In ruling as we do, however, we wish to make it clear that we do intend to back up district judges in their efforts to dispose of criminal cases expeditiously, to apply the prompt disposition rules with even-handedness toward the government and toward defendants and to utilize the summer months to try criminal cases. These commendable objectives can be achieved without denying any party its essential rights.

■ We conclude, on the particular facts of this case, that the district court abused its discretion in denying the government's application for a two week adjournment of the trial and in dismissing the indictment.[4]

Reversed and remanded for trial.

---

4. Our dissenting colleague refers to this as a "test" case. We regard it as a test of just

FEINBERG, Circuit Judge (dissenting):

I respectfully dissent.

This case involves much more than the narrow issue—admittedly crucial to the parties—of the fate of a particular criminal indictment. It is a test, I believe, of whether the district court and the Circuit Council really meant what they were saying in adopting the Plan for Achieving Prompt Disposition of Criminal Cases under Rule 50(b).

Paragraph 9(a) of the Southern District Plan provides as follows:

9. *Responsibility of United States Attorney and Defense Counsel.*

(a) The court has sole responsibility for setting and calling cases for trial. Neither a conflict in schedules of Assistant United States Attorneys nor a conflict in schedules of defense counsel will be ground for a continuance or delayed setting except under unusual circumstances approved by the court and called to the court's attention at the earliest practicable time. Each judge will schedule criminal trials at such times as may be necessary to assure prompt disposition of criminal cases. The United States Attorney will familiarize himself with scheduling procedures of each judge and will assign or reassign cases in such manner that the government will be able to announce ready for trial.

The district judge relied on this language in his opinion dismissing the indictment. The Plan makes clear that the court has "sole responsibility for setting . . . cases for trial," places upon counsel for the Government and for the defense the burden of calling problems to the attention of the court, commands the judge to schedule criminal trials so as to assure prompt disposition, and calls on the United States Attorney

one thing: the district court's exercise of discretion.

to become familiar with judges' scheduling procedures.

Bearing these directives in mind, I do not think the district judge here abused his discretion—even though we might have handled the matter differently in his place. When the United States Attorney received notice on August 6 that a pre-trial conference would be held on August 14, he should have foreseen the possibility that the judge might schedule this simple case for trial in August. At that time, the Assistant knew that one of his key witnesses (Agent Goetz) was going on leave on August 13 and that the other (Agent Jordan) was slated to enter the hospital on August 19. At the very least, the Assistant should have immediately notified the judge of these circumstances so that the judge could either set down the trial for a date before Agent Goetz went on leave or rearrange his own schedule so that other cases planned for a later date could be moved up. Alternatively, the Assistant could have made sure that Agent Goetz could be contacted during the week of August 13 so that the trial might have been held late that week, before Agent Jordan went into the hospital. By unilaterally deciding that the case could not be tried until on or after September 1, the Government usurped the trial judge's "sole responsibility for setting and calling cases for trial."

It should also be stressed that the Government began these proceedings. Unlike a defendant, whose role is strictly reactive, appellant had a measure of freedom in choosing when to initiate prosecution. The trial judge noted in his opinion dismissing the charges that the indictment was filed on July 3, 1973. On August 14, the day when the judge ordered the trial to begin three days later, the indictment had already been on file for more than 40 days. During this period, the Government should have had ample time in which to prepare for trial and schedule its agents' leaves. Under these circumstances, appellant should not now be heard to complain of having been rushed to trial. Furthermore, the majority appears to concede that the prosecutor was remiss in neglecting to familiarize himself with the district judge's scheduling procedures and in failing to inform the trial court promptly of its witnesses' future unavailability. This point alone compels affirmance since a trial judge surely does not abuse his discretion in dismissing an indictment for *negligent* failure to prosecute.

Finally, we have been strongly urging trial judges in the Southern District to dispose of criminal matters expeditiously. Moreover, we have here a judge who was willing to use the month of August to try criminal cases. Failing to stand by him in such a situation can only detract from the force of our own exhortations to hear criminal cases very promptly.

Accordingly, I would affirm the judgment dismissing the indictment.