550 F.2d 1251
 UNITED STATES of America, Plaintiff-Appellant,
v.
Kevin W. BARNEY et al., Defendants-Appellees.
UNITED STATES of America, Plaintiff-Appellant,
v.
Craig William McLACHLAN, Defendant-Appellee.
UNITED STATES of America, Plaintiff-Appellant,
v.
Frank S. BRZOTICKY, Defendant-Appellee.
UNITED STATES of America, Plaintiff-Appellant,
v.
David BAKER, Defendant-Appellee.
 Nos. 76-1147 to 76-1150.
 United States Court of Appeals,
Tenth Circuit.
 March 1, 1977.
 
 Ramon M. Child, U. S. Atty., and Steven W. Snarr, Asst. U. S. Atty., Salt Lake City, Utah, for plaintiff-appellant.
 Phil L. Hansen, of Phil L. Hansen & Associates, Salt Lake City, Utah, for Kevin W. Barney, James S. Liddiard and Lynn D. Losee, defendants-appellees.
 John R. Anderson, of Beaslin, Nygaard, Coke & Vincent, Salt Lake City, Utah, for David Baker, defendant-appellee.
 Before McWILLIAMS, BARRETT and DOYLE, Circuit Judges.
 McWILLIAMS, Circuit Judge.
 
 
 1
 In each of these four appeals the United States seeks reversal of a judgment of dismissal entered by the trial court in four separate criminal cases. In our view in each instance the judgment of dismissal resulted from a clear abuse of discretion, and we severally reverse the judgments entered.
 
 
 2
 Kevin Barney and James Liddiard were arrested on August 27, 1975 on a complaint charging a violation of 18 U.S.C. § 1855, setting on fire timber on federal lands. They were granted a conditional release on the charge. Lynn Losee was arrested on October 2, 1975, on the same charge as Barney and Liddiard on the basis of the same incident. Losee was also conditionally released.
 
 
 3
 Craig McLachlan was arrested on August 27, 1975, for violation of 18 U.S.C. § 1014, making a false statement on a loan application. A preliminary hearing was held on September 24, 1975, after which he was bound over to the district court. He was released from custody at this time.
 
 
 4
 Frank Brzoticky was arrested July 31, 1975, on a complaint charging a violation of 18 U.S.C. § 922(g), unlawful transportation of a firearm. A bond hearing was held the same day and he was released on bond August 1, 1975. A preliminary hearing was held August 13, 1975, after which Brzoticky was bound over to the district court.
 
 
 5
 David Baker was arrested in Webster City, Iowa on July 16, 1975, for violation of 18 U.S.C. § 2314, the interstate transportation of a falsely made security. On August 11, 1975, a removal hearing was held and removal to Utah was ordered on August 15, 1975. After removal, Baker was brought before a magistrate and bail was set at $5,000. However, Baker remained in jail, because he could not post the required amount for bail.
 
 
 6
 On November 24, 1975, each of the six defendants named above waived indictment, and informations were filed that date to which all defendants pleaded not guilty. Eighteen days later, on Friday, December 12, 1975, the trial judge gave notice that there would be a call of the criminal calendar on the following Thursday, December 18, 1975, with jury trials to start immediately after the call of cases. Some twenty-three criminal cases were included in this particular call, including the four cases against the six appellees in these consolidated appeals.
 
 
 7
 The United States Attorney received notice of the calendar call on Friday afternoon, December 12, 1975, which gave him three working days, namely, the following Monday, Tuesday, and Wednesday, to ready himself for the trial of twenty-three cases on Thursday, December 18, 1975.
 
 
 8
 On Monday, December 15, 1975, the United States Attorney filed a motion for a continuance and requested that the calendar call then set for December 18, 1975, be delayed for at least twenty-one days, and held no earlier than January 5, 1976. In support of its motion the Government noted the short time in which it had to prepare and have served subpoenas for a large number of out-of-state witnesses, the travel problem created by the Christmas rush and a United Airlines strike, the Marshall's request that he have ten days notice for the service of any subpoena, and the fact that several in-state witnesses had left Utah for the holidays. No action was ever taken on this request.
 
 
 9
 On Thursday, December 18, 1975, the trial judge proceeded to call the calendar of criminal cases set for that date. In three cases the defendants changed their pleas to guilty. In four cases both the Government and defense counsel announced their readiness for trial, and the court set them for trial on the following day, Friday, December 19, 1975, on a trailing calendar basis. Eleven cases in which either the Government or defense counsel, or both, were unable to secure the attendance of witnesses were set over until January 5, 1976, with an additional case being continued to February 1, 1976, for trial.
 
 
 10
 When the case against Barney, Liddiard and Losee was called, defense counsel announced his readiness for trial. The Government indicated that it was in the process of securing the presence of a witness from Reno, Nevada, and anticipated that the witness could be present by the time the case would be reached on the trailing calendar. The trial judge stated that the case had been "reached right now" and forthwith entered a judgment of dismissal because the Government was not ready for instant trial. The formal judgment later entered by the trial judge read as a judgment of acquittal, not dismissal.
 
 
 11
 When the case against McLachlan was called, defense counsel announced his readiness for trial. The Government indicated it was not ready for trial because a key witness, McLachlan's ex-wife, who lived in Midway, Utah, could not immediately be located. Without further colloquy, the trial judge simply dismissed the case.
 
 
 12
 When the case against Brzoticky was called, defense counsel announced his readiness for trial. The Government indicated it was not ready for trial, there being two witnesses in California, two in Colorado, and two in Washington, D.C. When the Government stated it was not ready, the trial judge summarily dismissed the case.
 
 
 13
 When Baker's case was called, defense counsel indicated his readiness for trial and informed the court that some three days earlier he had filed a motion to dismiss because of a lack of speedy trial, his client having been in continuing custody for the preceding five months. The Government stated it was not ready for trial, having been unable to secure the attendance of a witness from California and one from Colorado because of transportation difficulties. Based on this brief colloquy, the trial judge dismissed the case.
 
 
 14
 It would appear that the case against Baker was dismissed on constitutional grounds, i. e., denial of a speedy trial as required by the Sixth Amendment, and that the other dismissals were based on Fed.R.Crim.P. 48(b), i. e., unnecessary delay on the part of the Government in bringing the defendants to trial. Assuming such to be the case, the trial court erred in both instances.
 
 
 15
 Baker was unable to post bail in the amount of $5,000, and he had remained in jail some five months when his attorney filed a motion to dismiss based on the Sixth Amendment. In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court held that under the circumstances of that case a five-year delay between initial arrest and trial did not violate the defendant's speedy trial rights. In thus holding the Supreme Court stated that the violation of a defendant's constitutional right to a speedy trial cannot be established by any inflexible rule, such as the mere passage of time, but can be determined only by application of a "balancing test," in which the conduct of the prosecution and that of the defendant are weighed. This balancing test necessarily compels an ad hoc approach and the test itself involves such factors as the length of the delay and the reason therefor, the defendant's assertion of his right, and resultant prejudice to the defendant.
 
 
 16
 In the instant case the trial judge did no "balancing" or "weighing." In fact his actions were the antithesis thereof. The trial judge, upon learning that Baker had been unable to make bond and had been in custody for five months, apparently concluded that this one fact in itself constituted sufficient ground for finding a violation of the Sixth Amendment right to a speedy trial. The trial judge's actions are at odds with the mandate in Barker v. Wingo, supra. For illustrative Tenth Circuit cases holding that under Barker v. Wingo there had been no abridgment of the defendant's right to speedy trial, see United States v. Goeltz, 513 F.2d 193 (10th Cir.), cert. denied, 423 U.S. 830, 96 S.Ct. 51, 46 L.Ed.2d 48 (1975), involving an eleven-month delay from indictment to trial; United States v. Latimer, 511 F.2d 498 (10th Cir. 1975), involving an eleven-month delay from arrest to trial; and United States v. Bettenhausen, 499 F.2d 1223 (10th Cir. 1974), involving a ten-month delay between trial and retrial.
 
 
 17
 The remaining cases were presumably dismissed under Rule 48[b], which authorizes a trial judge to dismiss a criminal proceeding if there be an "unnecessary delay" in bringing a defendant to trial. Was there unnecessary delay in any of the instant cases? We conclude that under the circumstances there was no such delay. A dismissal under Rule 48(b), whether it be on motion or sua sponte, is a matter addressed to the sound discretion of the trial court, and in the instant case we find abuse of that discretion. United States v. Aberson, 419 F.2d 820 (2d Cir.), cert. denied, 397 U.S. 1066, 90 S.Ct. 1497, 25 L.Ed.2d 637 (1970) and Hodges v. United States, 408 F.2d 543 (8th Cir. 1969). See also United States v. Clay, 481 F.2d 133 (7th Cir.), cert. denied, 414 U.S. 1009, 94 S.Ct. 371, 38 L.Ed.2d 133 (1973).
 
 
 18
 Having held that a dismissal under Rule 48[b] was improper, it follows that under the circumstances the trial court should have granted the Government's motion for a continuance. It is agreed that a motion for a continuance is addressed to the sound discretion of the trial judge, and in the absence of an abuse of such discretion, the action of the trial judge will be sustained on appellate review. United States v. Harris, 441 F.2d 1333 (10th Cir. 1971). In determining whether the trial court in the instant case abused its discretion, it should be kept in mind we are not dealing with a single case which has been set for trial, and one party, on the eve of trial, discovers that he, for one reason or another, is not ready for trial and seeks a continuance. Rather, this is an instance where the trial court ordered the Government, on three working days notice, to be ready to proceed to immediate trial on twenty-three cases under pain of dismissal if the Government was not thus ready to proceed. Such was utterly unreasonable and constitutes a gross abuse of discretion on the part of the trial judge.
 
 
 19
 More often than not, a motion for a continuance is sought by a defendant, and not the Government, and we are later presented with the question of whether a trial court abused its discretion in denying such motion. Here, the situation is reversed, with the Government seeking a continuance and the trial court, ignoring the Government's motion for a continuance, thereafter proceeding to dismiss certain cases in which the Government was unable to proceed to immediate trial. The Government, as well as the defendant, is entitled to notice and a reasonable time within which to get its witnesses to the courthouse. See United States v. Cacciatore, 487 F.2d 240 (2d Cir. 1973).
 
 
 20
 The judgments are severally reversed and the cases are remanded with directions that the informations be reinstated.