**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Malcolm McCONAHY, Defendant-Appellant.**

**No. 74–1393.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 4, 1974.

Decided Nov. 5, 1974.

Rehearing Denied Jan. 16, 1975.

Wayne H. Rusch, Madison, Wis., for defendant-appellant.

William J. Mulligan, U. S. Atty., and Randall Standfort, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before CUMMINGS, STEVENS and TONE, Circuit Judges.

TONE, Circuit Judge.

This appeal concerns the right to a speedy trial under a federal indictment when the defendant was serving a prison sentence in a foreign country.

In January 1969 the defendant Malcolm W. McConahy was released on bail pending appeal after having been convicted of mail fraud in the United States District Court for the Eastern District of Wisconsin and sentenced by that court to imprisonment for one year and one day. The bond signed by him required his appearance at all future hearings in the cause and gave his address as 120 South 12th Street, Minneapolis, Minnesota. When McConahy failed to appear at a hearing in the Wisconsin state court on an unrelated state charge, the federal prosecutor moved for an increase in the federal bond and mailed notice of this motion to McConahy at the Minneapolis

address given in the bond. McConahy failed to appear at the hearing on the motion. The District Court then entered an order requiring him to appear on April 21, 1969 and providing that if he failed to appear his bond would be forfeited and a bench warrant issued. Notice was sent to McConahy at the same address. He again failed to appear, and on May 13, 1969 an indictment was returned against him under 18 U.S.C. § 3150 charging wilful failure to appear as required by the order.

According to a stipulation between the government and the defendant in this case, from the time he was released on bond until January 21, 1969 McConahy lived with his father at the Minneapolis address. On that date he went to California and remained there until at least March 3, 1969. On June 17, 1970 McConahy was arrested in London, England, where he was held until the following September by reason of the pending charges in the United States and thereafter on forgery charges brought against him by the British government. In March 1971 he was convicted on the British charges and sentenced to a term of five years imprisonment with a recommendation for deportation.

McConahy was released from British custody on December 24, 1973 and deported to the United States in January 1974. His trial on the bail-jumping charges was held before the court without a jury on May 8, 1974, approximately five years after the date of the indictment. Prior to trial he filed a motion to dismiss the indictment on the ground that the government had failed to give him a speedy trial as guaranteed by the Sixth Amendment. The motion was ruled on during the trial, after the introduction of evidence bearing upon the motion. The court, while finding that "the ability to defend is made more difficult for both the government and the defendant by the period of delay involved," held that the defendant was not entitled to dismissal because "the government is not chargeable with delay."

At the conclusion of the trial, the court found McConahy guilty.

The government concedes that "the defendant from time to time has asserted his speedy trial rights." It is therefore unnecessary to describe in detail McConahy's requests made during the time he was incarcerated in England that arrangements be made to return him to the United States for trial.

The government also concedes, and the District Court found, prejudice resulting from the delay. The prejudice consisted of the unavailability of witnesses whose testimony would have been relevant on the issue of whether McConahy's failure to appear on April 21, 1969 was wilful, i. e., whether he received notice that he was required to appear on that date and whether he understood prior to that date that he was permitted to leave the jurisdiction and would not be required to be in court for an extended period. *Cf.* United States v. DePugh, 434 F.2d 548 (8th Cir. 1970), cert. denied, 401 U.S. 978, 91 S.Ct. 1208, 28 L.Ed.2d 328 (1971); United States v. Reed, 354 F. Supp. 18 (W.D.Mo.1973). He testified that there were three witnesses who would have been able to testify concerning communications he claimed to have received from his then attorney to the effect that he was permitted to leave the jurisdiction. One of the witnesses, his father, had died in 1973. His present attorney was unable to locate the other two witnesses, whom McConahy had known in California in 1969. McConahy also testified that as a result of the lapse of time he had lost notes and correspondence that would have had a bearing on wilfulness. Had the issue been McConahy's state of mind in May 1970, when he was apprehended in England, we would have great difficulty in finding that the alleged lost evidence was material. The relevant time, of course, is April 1969, and it is not inconceivable that he could have persuaded a trier of fact that he did not have the requisite wilfulness at that time. This, we assume, is the basis for the District

Court's finding and the government's concession that defendant's defense was prejudiced by the delay.

■ Under Barker v. Wingo, 407 U.S. 514, 530–533, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), four factors are to be considered in determining whether the defendant has been deprived of his right to a speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. The government concedes in the case at bar that the third and fourth factors weigh in favor of the defendant and also that the delay "was substantial"; but it argues that the reason for the delay is the defendant's own conduct, and we should therefore apply the following rule stated in Barker v. Wingo: "We hardly need add that if delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine, the demand rule aside." 407 U.S. at 529, 92 S.Ct. at 2191.

■ In a sense the delay resulting from a defendant's imprisonment in another jurisdiction is attributable to him. The quoted sentence from *Barker* does not, however, apply to such a case unless either the defendant fails to demand that an effort be made to have him returned for trial or, after a demand has been made by him, the prosecuting authorities make a diligent, good faith effort to have him returned and are unsuccessful. In Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), the Court held that a defendant under a Texas criminal charge who was serving a federal prison sentence was denied his right to a speedy trial by the failure of the Texas authorities to attempt to arrange for his presence for trial before the expiration of his federal sentence, when he had requested them to do so. The Court said, "Upon the petitioner's demand, Texas had a constitutional duty to make a diligent, good-faith effort to bring him before the Harris County court for trial." 393 U.S. at 383, 89 S.Ct. at 579.

■ There is no reason not to apply the rule of Smith v. Hooey when the defendant is incarcerated by a foreign government rather than the United States or one of its states. That the additional expense is not a factor deserving of consideration is clear from footnote 11 in the opinion in that case. 393 U.S. at 380, 89 S.Ct. 575. Unless there is a showing that an effort to have the defendant returned to this country for trial would be futile, the government must make such an effort. There has been no such showing here.

■ It is argued that neither bail jumping nor the offense for which McConahy was convicted in 1969 was an extraditable offense under the Extradition Treaty between the United States and Great Britain, which is in evidence, and that McConahy therefore could not be extradited. Assuming this is so, it is immaterial. There would have been no need to extradite McConahy, since he was not resisting extradition. On the contrary, as the government concedes, he was requesting that he be returned to the United States to answer the charges pending here.

We are simply unable to determine on the record before us whether the British government would have honored a request that McConahy be returned to the United States for trial before he completed serving his British sentence. McConahy testified that the British authorities told him that such a request would be honored. The prosecution offered nothing to the contrary in the form of an opinion from the Office of the Secretary of State, expert testimony on relevant British or international law or policy, or otherwise. We are compelled to assume on this record that it might have been possible to obtain the British cooperation that would have been necessary to bring McConahy back for trial.

The government accordingly had "a constitutional duty to make a diligent, good-faith effort to bring [defendant] before the [district] court for trial." Smith v. Hooey, *supra*, 393 U.S. at 383, 89 S.Ct. at 579. It made no effort what-

soever and simply ignored McConahy's requests that he be returned here for trial.

■ We are therefore required on the authority of Smith v. Hooey to reverse the judgment of the District Court and since irremediable prejudice to the defense resulted from the delay, to order that the indictment be dismissed.

Reversed.