**Manuel ESTRADA, Appellant
(Defendant below),**

v.

**The STATE of Wyoming, Appellee
(Plaintiff below).**

No. 5221.

Supreme Court of Wyoming.

May 28, 1980.

Michael Schilling, Appellate Counsel, Wyoming Public Defender, Cheyenne; Gerald M. Gallivan, Faculty Advisor, Wyoming Defender Aide, Laramie, and C. Robert Klus, Jr., Student Director, Wyoming Defender Aide, Laramie, for appellant.

John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., James Gusea, Asst. Atty. Gen., and Berry F. Laws, III, Senior Law Student and Legal Intern, Cheyenne, for appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROSE, Justice.

Appellant claims that his conviction for aggravated robbery should be reversed for failure of the State to guarantee his speedy-trial rights. The appeal also presents claims of Fourth Amendment violations, which we will dispose of by discussing the harmless-error and plain-error doctrines. We will affirm.

### THE SPEEDY–TRIAL–ISSUE—FACTS

Appellant robbed Ray's Liquor Store in Buffalo, Wyoming, on October 5, 1978, and was arrested shortly thereafter in Colorado for a post office robbery. Wyoming authorities were contacted on October 17, 1978, and two days later the Wyoming robbery victim identified the defendant from a photo-lineup. A criminal complaint was filed against the defendant on October 21, 1978; the preliminary hearing was held on July 18, 1979, almost nine months after the complaint was filed; and the trial was commenced on September 26, 1979.

The State concedes that the eleven-month interval between filing the complaint and commencing the trial is sufficiently long to merit serious inquiry into the question of whether the defendant was deprived of his state and federal constitutional rights to a speedy trial. *Phillips v. State*, Wyo., 597 P.2d 456, 460 (1979); and *Cherniwchan v. State*, Wyo., 594 P.2d 464, 468–470 (1979).

The following matters are relevant to our inquiry:

1. By January 25, 1979, the defendant had been transferred from Colorado to the Federal Penitentiary in Leavenworth, Kansas. On that date, according to the prosecutor's argument in the district court on the defense motion to dismiss for lack of speedy prosecution, the district court signed papers requesting extradition.

2. On February 6, 1979, according to the prosecutor, Governor Herschler signed the extradition papers which were sent to Kansas.

3. According to the prosecutor, these papers were rejected by the officials in Kansas. The district court, on February 27, 1979, issued a Writ of Habeas Corpus Ad Prosequendum to the warden of the Federal Penitentiary in Leavenworth requesting the production of the defendant. This writ was also unproductive.

4. On April 24, 1979, "interstate detainers" "were sent to Kansas."

5. On May 6, 1979, the prosecutor received word from the federal warden that the defendant would be available for pickup on June 25, 1979.

6. The defendant was picked up on June 25, 1979.

7. On June 26, 1979, the Justice of the Peace set a preliminary hearing for June 29, 1979.

8. Also on June 26, 1979, legal counsel was appointed for the defendant.

9. On June 29, 1979, the Justice of the Peace granted the defendant's motion for continuance to have the preliminary hearing take place on July 18, 1979.

10. On July 18, 1979, the preliminary hearing was held.

11. On July 20, 1979, the defendant was arraigned.

12. On July 27, 1979, the defendant moved that the case be dismissed for violation of his speedy-trial rights. At a hearing on this motion, appellant's counsel argued that appellant had been prejudiced by not being in the state to locate a possible alibi witness who had apparently disappeared by the time appellant was brought to Wyoming for trial.

13. The motion was argued and denied on August 9, 1979. Trial was set for September 6, 1979.

14. On August 28, 1979, the court ordered the trial delayed until September 26, 1979. This continuance was requested by the defendant.

## THE SPEEDY–TRIAL–ISSUE—LAW

It is conceded on all sides that appellant possesses state and federal constitutional rights to a speedy trial. *Cherniwchan*, supra, 594 P.2d at 467. The two controlling federal cases in this area are *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and *Moore v. Arizona*, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973). *Cherniwchan*, supra, is the controlling Wyoming case.

■ These cases do not set any specific deadline for trial, but do identify four factors which must be considered and against which must be balanced the conduct of both the defendant and the prosecution in evaluating a defendant's claim of unconstitutional delay. The four factors are: (1) length of delay; (2) reason for the delay; (3) defendant's assertion of his right; and (4) prejudice to the defendant. *Cherniwchan*, supra, at 468.

### Length of Delay

■ In order to compute the length of delay, it is necessary to determine when the appellant's speedy-trial right began to run with respect to the Wyoming charge. A reading of our earlier decision in *State v. Clark*, Wyo., 392 P.2d 539, 540 (1964), would suggest that the speedy-trial right does not run while an accused is imprisoned by a different sovereign. Under *Clark*, it would appear that the appellant's speedy-trial right began when he was brought into Wyoming. However, this holding must be evaluated in the spotlight of the later cases of *Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), and *United*

*States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). To the extent that our holding in *Clark* is inconsistent therewith, *Clark* must be considered to be overruled. In *Smith*, a federal prisoner was charged with a Texas crime. Texas took the position that it had no obligation to try the prisoner until he had served his federal sentence and was released. The Supreme Court held that the speedy-trial right could not be dispensed with so lightly. *Smith*, supra, 393 U.S. at 383, 89 S.Ct. at 579. The Court held that "[u]pon the petitioner's demand, Texas had a constitutional duty to make a diligent, good-faith effort to bring him before the . . . County court for trial." Id. In view of the extensive discussion in *Barker*, supra, on the significance of the accused's assertion of his speedy-trial right or failure to assert his speedy-trial right, we interpret *Smith* to be modified by *Barker*. In other words, as will be discussed in more detail, infra, appellant's failure to assert his speedy-trial right before being brought to Wyoming does not *per se* foreclose consideration of his claim of a speedy-trial violation, although it does dilute it.

*United States v. Marion*, supra, dictates that appellant's speedy-trial right with respect to the Wyoming charge began when a Wyoming complaint was filed against him. *United States v. Marion* contains very strong language stating that

". . . it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." 404 U.S. at 320, 92 S.Ct. at 463.

■ We hold, therefore, that the speedy-trial right in this case was triggered when Wyoming filed a complaint against the appellant.

■ Some eleven months elapsed between filing the complaint and commencing the trial. As previously mentioned, in *Barker*, supra, 407 U.S. at 523, 92 S.Ct. at 2188, the court expressly refused to impose a deadline for bringing a defendant to trial. In that case, almost three-and-one-half years passed between the indictment and the defendant's first protest with respect to his speedy-trial rights. After Barker first asserted these rights, another one-and-one-half years elapsed before he was actually brought to trial. The Supreme Court affirmed the conviction and refused to find a violation of his constitutional rights. The *Barker* facts are substantially different from those in the case at Bar, but we cite the *Barker* background merely to illustrate that even very lengthy delays do not give rise to a *per se* conclusion of violated constitutional rights.

### Reason for the Delay

■ In reviewing the facts, we conclude that the State was guilty of no unnecessary delay during the three-month interval between the time when the appellant was brought into Wyoming and when he was tried. Although the State argues that there was a three-month delay between filing the complaint and the State's first attempt at extradition, we cannot, upon reviewing the record, credit the State with attempting to extradite appellant until February, 1979, or some four months after the complaint was filed.[1] Following this four-month delay there was an additional four-month delay between the State's first record attempt to extradite and the actual transfer of custody of the appellant from the federal prison to the Wyoming authorities. The record reveals that the appellant acquired a 25-year federal prison sentence during this eight-month period.[2] He was

1. The prosecutor's unsworn arguments at the hearing on the motion to dismiss may not be treated as evidence.

2. It would have helped our analysis of the speedy-trial issue had there been a copy of the federal prison sentence in the record. It would be particularly helpful for us to know when the

federal sentence was imposed. However, the transcript of the sentencing hearing leaves no doubt that there was agreement by both sides that Estrada had received a federal prison sentence and, in fact, the sentence decreed that Estrada's Wyoming sentence was to run consecutively with the federal sentence.

not, of course, available for extradition while the federal charge was pending. In addition, we recognize that some time was required for Wyoming to request custody of the prisoner from the federal authorities. Perhaps the county prosecutor acted with admirable dispatch in obtaining custody of the appellant—if so, we regret that he failed to get into the record evidence of such diligence.[3] Perhaps the prosecutor attacked the problem of obtaining custody in a dilatory or incompetent fashion—we just do not know and the record does not help us very much. At any rate, much of the burden for bringing the defendant to trial in a timely manner rests with the State. *Barker*, supra, 407 U.S. at 527–529, 92 S.Ct. at 2190–2191. Given this burden, it is incumbent upon the State to prove that delays in bringing a defendant to trial are reasonable and necessary. *United States v. McConahy*, 7 Cir., 505 F.2d 770, 773–774 (1974), reh. denied. Accordingly, we conclude for purposes of this appeal that some, but not all, of the eight-month interval between filing the complaint and bringing the defendant to Wyoming constituted unnecessary delay.

■ Although "a valid reason . . . should serve to justify appropriate delay," a distinction should be made between unnecessary delay which is a "deliberate attempt to . . . hamper the defense," and delay resulting from a "more neutral reason such as negligence. . . ." *Barker*, supra, 407 U.S. at 531, 92 S.Ct. at 2192. "Neutral" unnecessary delay "should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Id. See, also, *Strunk v. United States*, 412 U.S. 434, 436, 93 S.Ct. 2260, 2262, 37 L.Ed.2d 56 (1973). In the case at Bar, there is no evidence or indication that there was any sinister motive in

any unnecessary delay in bringing appellant into Wyoming.

■ Finally, we should note that much of the delay in bringing appellant into Wyoming was the result of appellant's criminal conduct outside the State and appellant's resultant federal charge and prison sentence. Naturally, those necessary delays due to appellant's federal offense cannot be used to support a claim of a speedy-trial violation. *Clark*, supra; and *United States v. McConahy*, supra, at p. 773.

### Defendant's Assertion of his Right

There is no evidence or indication in the record that the appellant ever asserted his right to a speedy trial on the Wyoming charge until he was brought into the State. Both this court and the United States Supreme Court recognize that delay in proceeding to trial can favor the defendant. *Barker*, supra, 407 U.S. at 521, 92 S.Ct. at 2187; and see *Cherniwchan*, supra, at p. 470. Indeed, in the case at Bar, the chief prosecution witness, the robbery victim, was eighty years old at the time of the trial and had "a little heart condition." Because delay may benefit the defendant, both this court and the United States Supreme Court consider it relevant to ask whether the defendant has asserted his speedy-trial rights, although neither court considers a demand for a speedy trial an absolute prerequisite to an ultimate conclusion that the speedy-trial right was violated. *Cherniwchan*, supra, at p. 468; and *Barker*, supra, 407 U.S. at 523–529, 92 S.Ct. at 2188–2191.

■ In this case, however, the appellant's failure to assert his speedy-trial rights before he was brought into Wyoming is largely mitigated by the fact that he was not appointed counsel until he was brought

---

**3.** It would have been helpful had the record shown when appellant's federal charge was disposed of and when appellant was first available for extradition. The record should fully reflect the various attempts of the prosecutor to extradite the appellant so that a court can determine if the prosecutor made a diligent, good-faith effort to protect appellant's speedy-trial rights. The State invokes the familiar cry of federal red tape to explain the lengthy process of obtaining custody of the appellant. But from the record we cannot tell whether or not the prosecutor's pursuit of custody was sluggish or energetic.

into Wyoming.[4] A distinction should be made between an uncounselled failure to assert a speedy-trial right and a counselled one. *Barker*, supra, 407 U.S. at 529, 92 S.Ct. at 2191.

### Prejudice to the Defendant

 Prejudice need not be shown to prove a speedy-trial violation. *Cherniwchan*, supra, at p. 468; and *Moore*, supra. Prejudice may consist of: (1) oppressive pretrial incarceration; (2) pretrial anxiety; or (3) impairment of the defense. *Barker*, supra, 407 U.S. at 532, 92 S.Ct. at 2193. Appellant asserts only the third type of prejudice but has failed to buttress his assertion with any evidence.

### The Balancing Test

 In balancing the four factors discussed above, we conclude that appellant's speedy-trial rights were not violated. There is record evidence that appellant was and would necessarily have been detained for some time in federal custody before he could be released for trial in Wyoming. Given this fact, the defendant's naked claim of prejudice by any additional and unnecessary delay is unpersuasive. The prosecutor apparently acted in good faith and successfully obtained custody of the appellant in what was not an unusually long period of time—allowing for disposition of appellant's federal charge and for arranging for a transfer of custody.

### The Fourth-Amendment Issue

Appellant's car was searched by federal authorities pursuant to a valid federal search warrant after appellant was arrested for robbing a post office in Colorado. The search warrant authorized a search for specific items of evidence related to the post office robbery. When executing the search of the car, the postal inspector came across a liquor box bearing the address of the robbed liquor store in Buffalo, Wyoming, and containing bottles of liquor and cigarettes. He seized this box and its contents, even though the box was, of course, not described in the search warrant. (The postal inspector also seized from the car other items which were not described in the search warrant and which were either stolen in the Buffalo robbery or which had been involved in the Buffalo robbery.) At appellant's trial, the postal inspector testified for the State and the following dialogue was reported:

"Q (By Mr. Goddard) Mr. Huggins, what did you find in the defendant's car?

"A Well, among other things in the trunk of the vehicle, I found a box with the address of Ray Thorburn in Buffalo, Wyoming, and contained in that box were several bottles of liquor and cigarettes. There was also a yellow baseball cap in the trunk. Inside the vehicle, of course, was the registration I mentioned before, some coins, mint sets and an old—I think it was an 1886 dollar—and some uncirculated coins. I also found some tape, which is nylon-reinforced strapping tape, I would describe it as.

"Q I'm going to hand you what's previously been marked as State's Exhibit No. 7, and ask if you can identify that?

"A Yes. This is the box that I found in the trunk of the vehicle. It was intact at the time. It had not been flattened.

"Q Did it contain certain items—other items?

"A Yes, it did.

"Q And you recognize that as being the one you found in the vehicle?

"A Yes, sir.

"MR GODDARD: At this time, your Honor, we would move for admission of State's Exhibit No. 7.

"MR. JOHNSON: May counsel approach the bench?

"THE COURT: Yes.

"(An off-the-Record discussion was held at the bench.)"

4. Rule 6(a), W.R.Cr.P., provides the right to assign counsel to indigents only from the initial appearance before the commissioner.

At this point, the jury was excused so that the court could hear argument on the admissibility into evidence of the liquor box and other items seized in Colorado. A rather involved and confused discussion ensued. The trial judge appeared to be under the faulty impression that the box had been admitted into evidence prior to his dismissal of the jury. He stated that he would grant the suppression motion as to those items which hadn't been introduced into evidence already. The prosecutor then asked whether Exhibit 7, the box, was admitted. The court replied in the affirmative. Immediately upon resumption of the trial, the prosecutor said, "Your Honor, for the Record, the State would again move for State's Exhibit No. 7." The defense counsel thereupon renewed his objection to admission of the exhibit. The court replied, "All right. It may be received if it hasn't already. My understanding is that it has been received."

The litigants urge upon us their opposing views as to whether seizure of the liquor box was justified under the plain-view doctrine, as well as their opposing views as to whether the trial judge violated his own suppression-motion ruling by admitting the box into evidence. We need not address these two issues.

■ Any evidentiary value of the box as an exhibit was merely cumulative to the testimony of the postal inspector, reproduced above, to the effect that a liquor box bearing the address of the robbed Buffalo liquor store was found in appellant's car in Colorado. This testimony was not objected to and, therefore, the appellant does not and cannot complain about it now. If it was error to admit the box into evidence, it was harmless error because the box added nothing of substance to the already-admitted and damaging testimony of the postal inspector. In explaining our conclusion of harmless error, it may also be appropriate to point out that possibly the most damaging evidence against the appellant was the testimony of Nora Thorburn. Mrs. Thorburn is the mother of Ray Thorburn, the owner of the robbed liquor store, and was minding the store at the time of the rob-

bery when she was threatened and tied up by the robbers. We mention Mrs. Thorburn's testimony because we think it undercuts any possible argument that the introduction into evidence of the liquor box sufficiently enhanced the postal inspector's testimony about the box with the result that the admission of this piece of evidence was crucial to the jury's deliberations. Not only do we view the box as cumulative evidence, but we view it as evidence which, *standing by itself,* had no probative value.

We recently discussed the harmless-error doctrine in *Campbell v. State,* Wyo., 589 P.2d 358, 367 (1979); and the United States Supreme Court has discussed the matter in *Chapman v. State of California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), reh. denied. We recognize that if the box was in fact seized in violation of the Fourth Amendment, then its admission into evidence was constitutional error. However, we believe beyond a reasonable doubt that the possible error complained of did not influence the verdict. Accordingly, under *Chapman* and *Campbell,* supra, any possible error concerning admission of the box after the postal inspector had testified concerning the box was harmless error.

### Prosecutorial Misconduct?

As previously mentioned, the postal inspector was allowed to testify without objection as to the objects he found in appellant's car. Also, as previously discussed, the box was allowed into evidence as an exhibit, but other objects found by the postal inspector and stolen from the Thorburns were suppressed. In closing argument, the prosecutor made reference to all of the items found by the postal inspector in appellant's car and stolen from the Thorburns. Appellant argues that this was impermissible reference to suppressed evidence. This case is somewhat unusual in that some of the evidence was suppressed only after testimony relating to it had been received without objection.

■ However, our decision here remains uncomplicated because appellant's counsel failed to object to the prosecutor's

remarks. Appellant is therefore reduced to arguing that the error, if any, was plain error. This argument is without merit. In *Jones v. State*, Wyo., 580 P.2d 1150, 1153 (1978), we said that the plain-error doctrine "will be applied only where the error seriously affects the fairness or integrity of judicial proceedings." Since the postal inspector's testimony had already been received without objection and was by then etched upon the minds of the jurors, we do not find that the prosecutor's comments on that testimony—even if, arguendo, the suppression order made subsequent comment on that testimony improper—was plain error.

Affirmed.