Daniel HEINRICH, Appellant
(Defendant),

v.

The STATE of Wyoming, Appellee
(Plaintiff).

No. 5483.

Supreme Court of Wyoming.

Dec. 21, 1981.

John O. Housel, Housel & Housel, Cody, for appellant.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Allen C. Johnson, Senior Asst. Atty. Gen., and Dennis C. Cook, Legal Intern, Cheyenne, for appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROSE, Chief Justice.

Appellant, Daniel Heinrich, was convicted of first-degree sexual assault pursuant to § 6-4-302, W.S.1977. Trial on the charges commenced on December 3, 1980, the jury returned a verdict of guilty on December 5, 1980, and appellant was sentenced to a term in the Wyoming state penitentiary. In his appeal he raises the following issues for our review:

1. Were appellant's rights to a speedy trial as guaranteed by Art. 1, § 10 of the Wyoming Constitution and the Sixth Amendment to the United States Constitution violated?[1]

2. Was reversible error committed in the failure of the trial court to follow the procedure set forth in § 6-4-312, W.S. 1977, Cum.Supp.1981?

3. Did the trial court properly deny appellant's motion to limit the use of statements made during custodial interrogation?

4. Did the trial court commit reversible error in failing to give appellant's requested instruction concerning evidence of physical force?

We will affirm.

## FACTS

The incident giving rise to conviction occurred during the early morning hours of September 8, 1979. Appellant Heinrich, a resident of Cody, had spent much of September 7, 1979 frequenting bars in Powell. Throughout the day he had been in the company of Mrs. Harriett James, a resident of Powell. In the evening hours, Mr. Heinrich and Mrs. James proceeded to engage in "bar hopping" and, while going from one bar to another, they happened upon the victim, Pam Lopez, and her husband, Victor Lopez, who were engaged in an argument on the sidewalk. Mrs. Lopez was celebrating her 17th birthday. Appellant interjected a comment to Mrs. Lopez at this time

---

1. Article 1, § 10 of the Wyoming Constitution provides:

"In all criminal prosecutions the accused shall have the right * * * to a speedy trial by an impartial jury. * * *"

The Sixth Amendment to the United States Constitution provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *."

but then continued to go on with Mrs. James.

At approximately one a. m. Mr. Heinrich again encountered Mrs. Lopez, who was seeking a ride back to Cody since her husband had left her during the course of their argument. Heinrich agreed that she could ride to Cody with him. Mrs. Lopez then proceeded to visit several bars with appellant, Mrs. James and their friends.

About two in the morning, when the bars had closed, the appellant, Mrs. James and Mrs. Lopez proceeded to Mrs. James' house, where Mrs. Lopez waited in the living room as Heinrich and Mrs. James engaged in sexual relations in another room.

At approximately three a. m. the appellant and Mrs. Lopez began their journey back to Cody. About one mile west of Ralston, Heinrich turned off the Cody-Powell highway, stopped the vehicle and, under threat of bodily harm, forced Mrs. Lopez to have sexual intercourse with him. They then proceeded on to Cody where Heinrich dropped Mrs. Lopez off.

Mrs. Lopez, upon arriving in Cody, went directly to a friend's house where the police were contacted regarding the incident. Some seven hours later a search warrant was issued for appellant's house in Cody and in the course of executing the warrant, the police requested appellant to accompany them to the police station. Mr. Heinrich complied and, when they arrived at the station, he was read his *Miranda* rights and questioned about the incident, after which criminal charges were lodged.

## SPEEDY TRIAL

The chronology of facts which give rise to appellant's claim that he was denied his constitutional rights to a speedy trial are as set out below:

| | |
|---|---|
| September 8, 1979 | Appellant arrested and charged |
| October 29, 1979 | Arraignment held |
| November 28, 1979 | Trial set; continuance ordered at request of appellant |
| January 28, 1980 | Court hears appellant's motions for production of evidence |
| April 17, 1980 | Judge issues order in favor of appellant's motion for discovery |
| April 30, 1980 | Trial docketed but continued again |
| July 21, 1980 | Trial judge orders prosecution to provide requested documents to defense; case reset for October 21, 1980 |
| October 17, 1980 | Pretrial hearing set for this date cancelled due to absence of prosecutor |
| October 21, 1980 | Trial not yet held |
| October 23, 1980 | Hearing on various motions held; trial reset for December 1, 1980 |
| November 7, 1980 | Appellant files motion for dismissal for lack of a speedy trial |
| November 12, 1980 | Trial reset for December 3, 1980 |
| November 19, 1980 | Motion for dismissal heard |
| December 1, 1980 | All pretrial matters disposed of through conference call |
| December 3, 1980 | Trial commences |

It is apparent that appellant was not brought to trial until some 453 days had elapsed from the time he was charged with the first-degree sexual assault of Pam Lopez. Although we may be appalled by the substantial lapse of time in bringing Mr. Heinrich to trial, it is well settled that time alone is not conclusive on the question of whether or not a speedy-trial right has been violated.[2] *Estrada v. State*, Wyo., 611 P.2d 850 (1980); *Cherniwchan v. State*, Wyo., 594 P.2d 464 (1979); *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

Speedy-trial right is not a new area of discussion for this court. In our decision in *Cosco v. State*, Wyo., 503 P.2d 1403, 1405 (1972), we adopted a standard consisting of four factors which were set out by the United States Supreme Court in *Barker v. Wingo*, supra. We have consistently reaffirmed this position in a long line of cases. See: *Robinson v. State*, Wyo., 627 P.2d 168, 171 (1981); *Estrada v. State*, supra, 611 P.2d at 852; *Cherniwchan v. State*, supra, 594 P.2d at 468; *Stuebgen v. State*, Wyo.,

---

2. We expressly noted in *Estrada*, infra, 611 P.2d at 853, that in *Barker v. Wingo*, infra, the United States Supreme Court upheld a conviction even though over four years had elapsed between arrest and trial.

548 P.2d 870, 873 (1976). In *Estrada* we set out the four factors that will be considered in determining a speedy-trial issue as: (1) length of delay; (2) reason for delay; (3) defendant's assertion of his right; and (4) prejudice to the defendant. *Estrada*, supra, 611 P.2d at 852. We will address each of the four factors as they relate to appellant's claim, keeping in mind that in ascertaining whether or not speedy-trial rights have been violated, all of the factors must be considered and balanced in relation to all relevant facts. *Moore v. Arizona*, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973); *Stuebgen*, supra at 873.

### Length of Delay

We have already noted that 453 days passed until the appellant was brought to trial, and, although such delays are not looked upon favorably, we note that a lengthy delay in and of itself does not give rise to a "per se" conclusion that appellant's speedy-trial rights were violated. *Estrada*, supra, 611 P.2d at 853. Delay time is a consideration which we will take into account in applying the balancing test, and we reiterate that this court looks with disfavor upon undue delay in bringing a criminal case to trial.

### Reason for Delay

■ Our review of the facts leads us to the conclusion that the State, in this case, was not guilty of causing unreasonable delay in bringing the appellant to trial. It is apparent that the first delay which changed the trial setting from November 28, 1979 to April 30, 1980 resulted from appellant's efforts to obtain a continuance. The next delays are troublesome because the record fails to reflect the reason why the April 30, 1980 setting was postponed, then redocketed on July 21, 1980 for an October 21, 1980 setting. Although we recognize that the State has the burden of proving that delays are reasonable, we cannot, in this case, find that the mere absence of specific reasons in the record for the delay requires us to find that such delay was purposely caused by the State. "'Neutral' unnecessary delay 'should be weighted less heavily but nevertheless should be considered * * *.'" *Es-*

*trada*, supra, 611 P.2d at 854, quoting from *Barker v. Wingo*, supra, 407 U.S. at 531, 92 S.Ct. at 2192. The record discloses that appellant's counsel was responsible for the first resetting, and the record also reflects that docketing conflicts and other reasons caused the second set of delays. In addition, there is no dispute that the delay from October 21, 1980 until December 3, 1980 resulted from bad weather conditions which caused the prosecution to miss a motion hearing, and that further delay came about as a result of the judge's unfortunate and untimely illness. A defendant cannot be heard to claim that his rights to a speedy trial were violated because weather conditions or a judge's illness forced trial continuances.

### Defendant's Assertion of His Rights

The record also reflects that appellant failed to assert his speedy-trial rights until November 7, 1980. This involved a time lapse of some 427 days from the date he was arrested and charged with the sexual assault against Mrs. Lopez. We have never, however, held that the assertion of the right is a prerequisite for a determination that speedy-trial rights have been violated. *Estrada*, supra, 611 P.2d at 854. In this connection, we observe that appellant's delay in asserting his rights was a counseled decision and not an uncounseled one. The importance of such a distinction was noted by us in the *Estrada* case. See: *Estrada*, supra, 611 P.2d at 855, citing *Barker v. Wingo*, supra, 407 U.S. at 529, 92 S.Ct. at 2191. Thus, the fact that appellant delayed in asserting his rights while under the guidance of counsel becomes a part of our overall consideration.

### Prejudice to Defendant

■ Since the right to a speedy trial is constitutionally protected, the rule has been settled that prejudice need not be shown to prove a violation of that right. *Estrada*, supra, 611 P.2d at 855; *Cherniwchan*, supra, 594 P.2d at 468; *Moore v. Arizona*, supra. However, the United States Supreme Court in *Barker v. Wingo* did recognize that prejudice to a defendant could consist of (1)

lengthy pretrial incarceration, (2) pretrial anxiety, or (3) impairment of defense. The appellant in this case has asserted that the delays resulted in hindering his defense because of the loss or destruction of various items of evidence, and he also urges that the delays caused him substantial anxiety and resulted in familial separation. We are not able to agree with appellant's assertions of prejudice. Although his familial problems were unfortunate, we do not find that the destruction or loss of evidence which resulted from the lengthy trial-time lapse, for which defendant bore some responsibility, was any more disadvantageous to the defendant than it was to the State.

### Balancing the Factors

Our review of the record leads us to the conclusion that, in this case, appellant's rights to a speedy trial were not violated. We can only arrive at the conclusion that a good-faith effort occurred on the part of all concerned to bring the appellant to trial as quickly as possible.

## FAILURE TO COMPLY WITH § 6–4–312

Mr. Heinrich also contends error in the failure of the trial court to follow the procedures set up in § 6–4–312, W.S.1977, Cum.Supp.1981. With this contention we are forced to agree; however, we deem such error as harmless in that appellant has failed to show that any prejudice resulted.

Section 6–4–312, supra, provides:

"(a) In any prosecution under W.S. 6–4–302 through 6–4–305 or for any lesser included offense, if evidence of the prior sexual conduct of the victim, reputation evidence or opinion evidence as to the character of the victim is to be offered the following procedure shall be used:

"(i) A written motion shall be made by the defendant to the court at least ten (10) days prior to the trial stating that the defense has an offer of proof of the relevancy of evidence of the sexual conduct of the victim and its relevancy to the defense;

"(ii) The written motion shall be accompanied by an affidavit or affidavits in which the offer of proof shall be stated;

"(iii) If the court finds the offer of proof sufficient, the court shall order a hearing in chambers, and at the hearing allow the questioning of the victim regarding the offer of proof made by the defendant and other pertinent evidence;

"(iv) At the conclusion of the hearing, if the court finds that the probative value of the evidence substantially outweighs the probability that its admission will create prejudice, the evidence shall be admissible pursuant to this section. The court may make an order stating what evidence may be introduced by the defendant, which order may include the nature of the questions to be permitted.

"(b) This section does not limit the introduction of evidence as to prior sexual conduct of the victim with the actor.

"(c) Any motion or affidavit submitted pursuant to this section is privileged information and shall not be released or made available for public use or scrutiny."

In accord with this section, the appellant made the requisite offer of proof, which the trial judge found sufficient on the issue of consent. Once a determination is made that an offer of proof is sufficient, subsection (iii) of § 6–4–312(a), supra, requires the trial judge to order a hearing in chambers during which questioning of the victim shall be allowed. Because of the illness of one judge, the substituting judge held the statutory hearing, during a conference call, all without permitting the victim to be questioned. While we are aware that the trial judge desired to bring appellant's case to trial because of earlier delays, according to the dictates of § 6–4–312, supra, it was nevertheless incumbent upon the trial court to allow questioning of the victim. Also, the fact that § 6–4–312(a)(iv) grants the trial judge the discretionary power to determine the admissibility of the proffered testimony does not soften the impact of the refusal to permit questioning in light of the

fact that the statute requires the prior questioning of the victim before the ruling on admissibility can be made. The language of this statute is clear and therefore we are bound by its terms and cannot give to it another meaning. *Hayes v. State*, Wyo., 599 P.2d 558 (1979). By using the word "shall," the legislature has indicated a mandatory intent—one that cannot be ignored. *Mayland v. State*, Wyo., 568 P.2d 897 (1977). We hold, therefore, that error was committed by the trial judge when he refused to permit questioning of the victim during the hearing mandated by § 6–4–312, supra.

Having found error, it becomes necessary for us to decide whether the failure of the trial judge to abide by the dictates of § 6–4–312, supra, requires reversal. We hold that it does not.

■ Although the appellant is correct when he argues that error has been committed, he has, nonetheless, failed to show that such error prejudiced him. He seems to rely upon a contention, the sense of which is that he was denied the protections afforded him under § 6–4–312, supra. This position overlooks one important fact. Rape-shield statutes, such as our § 6–4–312, supra, were designed to protect the *victim* from embarrassment and abuse at trial and also to encourage the reporting of sexual assaults to the authorities. They are not enacted for the protection of the accused. *Marion v. State*, 267 Ark. 345, 590 S.W.2d 288 (1979); *People v. McKenna*, 196 Colo. 367, 585 P.2d 275 (1978); *In the Interest of Nichols*, 2 Kan.2d 431, 580 P.2d 1370 (1978). The fact that the victim was not present at the hearing has not been shown to have affected the appellant's case in any way. There is no showing in the record that an examination of the victim would have produced admissible evidence, and the probability is that it would not. See Annot., 94 A.L.R.3d 257, 265 (1979). Furthermore, the affidavit in support of appellant's written motion was not sufficient to indicate in any way appellant's intention to establish relevant and/or material facts through an examination of the victim. We cannot say

that this complained-of error affected substantial rights of the appellant and therefore must conclude that plain error is not present. *Jones v. State*, Wyo., 580 P.2d 1150 (1978); *Seyle v. State*, Wyo., 584 P.2d 1081 (1978); *Daellenbach v. State*, Wyo., 562 P.2d 679 (1977). In the absence of prejudice we cannot consider the complained-of error to be of the magnitude necessary for reversal. *Belondon v. City of Casper*, Wyo., 456 P.2d 238, cert. denied 398 U.S. 927, 90 S.Ct. 1815, 28 L.Ed.2d 89 (1969); *State v. Spears*, 76 Wyo. 82, 300 P.2d 551 (1956).

## STATEMENTS MADE DURING CUSTODIAL INTERROGATION

■ The appellant also argues that the trial court erred in failing to suppress statements made by the appellant at the sheriff's office in Cody. This contention is based upon the fact that the sheriff's deputy who read appellant his rights failed to inform the appellant that he had the right to have counsel present before questioning. Appellant also attempts to support his argument with the allegation that he was arrested before any questioning occurred and that he was not read his *Miranda* rights at the time of his arrest. The argument presents two questions with which we must concern ourselves: (1) Was appellant under arrest when the search warrant was served? and (2) Were appellant's answers taken in derrogation of his *Miranda* rights?

We first address ourselves to appellant's contention that he was under arrest at the time the search warrant for his house was served upon him some seven hours after Mrs. Lopez informed the police of the incident. The relevant facts on this point are that Deputy Parkins, an officer for the Park County Sheriff's Department, asked the appellant to go downtown with him at the time the search warrant was issued. In response to this request, the appellant voluntarily agreed to accompany the deputy. There is no evidence in the record that any conversation occurred between the appellant and Parkins during the ride to the station. After arriving at the station, Mr.

Heinrich was read his rights, and then questioned. At the suppression hearing Deputy Parkins testified that he requested the appellant to come downtown with him so that he could interview him concerning Mrs. Lopez's complaint. He also testified that the appellant agreed to go and that he was not placed under arrest until sometime after they arrived at the station.

Upon reviewing the above facts, we believe that our decision in *Fitzgerald v. State*, Wyo., 601 P.2d 1015 (1979), clearly requires a finding that appellant in this case was not under arrest at the time he agreed to accompany the officer to the sheriff's office. In *Fitzgerald* we concluded that if an individual is taken to a police station involuntarily, then statements made as a result of this involuntary movement could be properly suppressed even though adequate *Miranda* warnings were given. *Fitzgerald*, supra, 601 P.2d at 1018. However, we concluded that if the person goes voluntarily to the police station, then his statements can be used if he is apprised of his *Miranda* rights. It is our judgment, in the matter at hand, that Heinrich, when asked to accompany the officer, voluntarily and of his own free will chose to comply with the officer's request. It is also important to note that, in the present case, no statements sought to be suppressed were made until after appellant had been apprised of his *Miranda* rights.[3] Thus, whether or not appellant was under arrest really bears little relevance to the question of whether his statements should have been suppressed in light of the fact that *Miranda* rights only attach to custodial interrogation and not immediately at the time a person is approached by the police.[4] *Dryden v. State*, Wyo., 535 P.2d 483, 491 (1975). Only when the police seek to interrogate must those warnings, of necessity, be given.

As to appellant's claim regarding the sufficiency of the rights which Deputy Parkins read to him, we conclude that Heinrich was sufficiently apprised of all of his rights and that he voluntarily waived those rights before answering the deputy's questions. He was apprised of all the necessary elements that we required in *Dryden v. State*, supra. The trial court properly rejected the motion to suppress.

## FAILURE TO INSTRUCT THE JURY ON FORCE

Our review of the record and the instructions given by the district court in this case, require us to hold that it was not error for the court to refuse to give the appellant's requested Instruction No. B.[5] It is a well-settled rule of this court that the jury must always be instructed on the law in language it can understand and comprehend. *Horn v. State*, Wyo., 554 P.2d 1141 (1976). We believe that Instruction No. 3 as given by the court in this case correctly stated the law of first-degree sexual assault, in that its language closely followed that of § 6–4–302, W.S.1977, our first-degree sexual assault statute.[6] Appellant's

---

**3.** The reverse is true in *Fitzgerald*, supra, where we upheld the use of statements made by the appellant while he was entering the police car before ever being apprised of his *Miranda* rights.

**4.** Our decision today in no way changes the definition of "arrest" as set out in *Rodarte v. City of Riverton*, Wyo., 552 P.2d 1245, 1251 (1976).

**5.** Instruction No. B reads:
"INSTRUCTION NO. *B*
"Physical force as an element of first degree sexual assault can be shown by the acts on the part of the victim to resist and mere general statements or conclusions by the victim that she did her utmost to resist or avoid the Defendant will not suffice to establish the

fact of resistance. That there is no indication of violence is a strong circumstance showing lack of resistance and where there is no evidence of yielding through fear the absence of any tearing or disarray of clothing belonging to the victim is strong evidence of willingness and lack of resistance.
"Evidence of fear must not be fanciful but substantial. Statements by the victim that she was scared are not sufficient to prove fear. The fear must be based upon something of substance and furthermore the fear must be of death or severe bodily injury."

**6.** Instruction No. 3 reads:
"INSTRUCTION NO. *3*
"The necessary elements of the crime of sexual assault in the first degree are:

requested instruction was merely cumulative, argumentative and designed to confuse the jury, and although it may have contained a correct proposition of law, it was not error to refuse to give it. *Alcala v. State*, Wyo., 487 P.2d 448 (1971), cert. denied 405 U.S. 947, 92 S.Ct. 1259, 31 L.Ed.2d 466 (1971); *Channel v. State*, Wyo., 592 P.2d 1145 (1979).

Affirmed.

"1. The crime occurred within the County of Park, on or about the date of September 8, 1979; and
"2. The Defendant inflicted sexual penetration on Pam Lopez; and
"3. The Defendant caused submission of Pam Lopez by threat of serious bodily injury or extreme physical pain; and Pam Lopez reasonably believed that the Defendant had the present ability to execute these threats.

"If you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the Defendant not guilty of sexual assault in the first degree.
"If, on the other hand, you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the Defendant guilty of sexual assault in the first degree."