**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Francisco DELEON,
Defendant-Appellant.**

No. 82–1872.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 8, 1982.
Decided June 22, 1983.

Kenneth L. Cunniff, Chicago, Ill., for defendant-appellant.

Canella E. Henrichs, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before WOOD and ESCHBACH, Circuit Judges, and HOFFMAN, Senior District Judge.*

WALTER E. HOFFMAN, Senior District Judge.

On July 24, 1978, a warrant was issued for Deleon's arrest because of an alleged illegal distribution of heroin by Deleon in September of 1977. On October 11, 1978, after no arrest had been made by the federal government pursuant to the July 24 warrant, an indictment was returned by a grand jury charging Deleon with conspiring to distribute heroin and with the distribution of heroin in violation of 21 U.S.C. § 841(a)(1). On October 18, 1978, the date the case was originally set for arraignment and plea, the District Court reassigned the case to the fugitive calendar since the Government had failed to locate Deleon. On or about February 1, 1982, the Government located and arrested Deleon in McAllen, Texas, pursuant to the bench warrant issued following the October, 1978, indictment.

On March 11, 1982, Deleon filed a motion to dismiss the indictment. Deleon claimed in his motion that his Sixth Amendment

---

* Honorable Walter E. Hoffman, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

right to a speedy trial had been violated thereby causing his defense of the charges against him to be impaired. Alternatively, Deleon claimed that even if the Court determined that his Sixth Amendment right to a speedy trial had not been violated, the Court should nevertheless exercise its discretionary authority and dismiss the indictment under Federal Rule of Criminal Procedure 48(b). In response the Government submitted ten DEA investigative reports and stated that, based on those reports, it was apparent that the delay in the case was caused not by Government negligence but by Deleon's fugitive status.

On March 30, 1982, the District Court, without an evidentiary hearing, denied Deleon's motion to dismiss. Subsequently, on April 20, 1982, the jury returned a verdict finding Deleon guilty as charged. Deleon now appeals his conviction raising the same points made in his motion to dismiss, and adding that the District Court further erred by denying his motion to dismiss without granting him an evidentiary hearing.

■ In regard to Deleon's assertion that an evidentiary hearing should have been granted we simply note that because the District Court denied Deleon's motion to dismiss without an evidentiary hearing, we are forced to assume as true the factual allegations made in Deleon's motion and his accompanying memorandum in support thereof. *See Isaac v. Perrin,* 659 F.2d 279, 281 (1st Cir.1981); *Jones v. Morris,* 590 F.2d 684, 687 (7th Cir.), *cert. denied,* 440 U.S. 965, 99 S.Ct. 1513, 59 L.Ed.2d 780 (1979); *Spinkellink v. Wainwright,* 578 F.2d 582, 590 (5th Cir.1978), *cert. denied,* 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979); *Morris v. Wyrick,* 516 F.2d 1387, 1392 (8th Cir.),

*cert. denied,* 423 U.S. 925, 96 S.Ct. 268, 46 L.Ed.2d 251 (1975). With this in mind we turn to Deleon's speedy trial claim.[1]

## I

### *Speedy Trial Allegation*

■ The Supreme Court has established a four-part balancing test to determine whether a defendant's constitutional right to a speedy trial has been violated. *See Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The four factors are the length of the delay, the reasons for the delay, the nature of the defendant's assertion of his right to a speedy trial, and the prejudice caused to the defendant as a result of the delay. *Id.* at 530–33, 92 S.Ct. at 2191–93. *See United States v. McConahy,* 505 F.2d 770 (7th Cir.1974).

■ The first factor, the length of the delay, is the initial area to be addressed. With respect to this factor, because the Sixth Amendment attaches when a "defendant is indicted, arrested, or otherwise officially accused," the length of the delay in this instance is measured from the time the warrant for his arrest was first issued on July 24, 1978, to the commencement of trial on April 19, 1982. *United States v. MacDonald,* 456 U.S. 1, 6, 102 S.Ct. 1497, 1501, 71 L.Ed.2d 696 (1982).[2] This period covers approximately 44½ months. Since a delay of this length is considered "presumptively prejudicial" further inquiry into the speedy trial allegation is necessary. *Barker v. Wingo, supra,* 407 U.S. at 530, 92 S.Ct. at 2191. *See United States v. Jackson,* 542 F.2d 403, 407 (7th Cir.1976) (12 month delay considered presumptively prejudicial); *United States v. Detienne,* 468 F.2d 151, 156

---

1. In the case at hand there is no allegation of a Speedy Trial Act violation. *See* 18 U.S.C. § 3161 et seq. Nevertheless, even if there is compliance with the Speedy Trial Act such compliance does not work as a bar to a Sixth Amendment claim. 18 U.S.C. § 3173.

2. We do not necessarily conclude that a defendant is "officially accused" so that a defendant's Sixth Amendment right to a speedy trial attaches at the time a warrant for his arrest is first issued since this issue has not been properly briefed. *See generally, Dillingham v. Unit-*

ed States, 423 U.S. 64, 65, 96 S.Ct. 303, 303, 46 L.Ed.2d 205 (1975), where the Supreme Court concluded that the definition of "accused" included for purposes of the Sixth Amendment, formal indictment or information or arrest. However, since the Government, according to an affidavit submitted by the DEA, began its search for Deleon at the time the warrant was first issued on July 24, 1978, we will measure the length of delay at this point only for the purpose of applying the *Barker v. Wingo* four-part balancing test in this proceeding.

(7th Cir.), *cert. denied,* 410 U.S. 911, 93 S.Ct. 977, 35 L.Ed.2d 274 (1972) (19 month delay was enough to trigger inquiry into the other *Barker* factors).

■ The second factor to be considered is the reason for the delay. With respect to this factor we note that the Government, under the Sixth Amendment, has a "constitutional duty to make a diligent good faith effort" to locate and apprehend a defendant and bring that defendant to trial. *Smith v. Hooey,* 393 U.S. 374, 383, 89 S.Ct. 575, 579, 21 L.Ed.2d 607 (1969); *United States v. McConahy, supra* at 773–74; *United States v. Weber,* 479 F.2d 331, 332–33 (8th Cir. 1973). The question here is whether the reason for the delay is because the Government breached that duty.

■ Deleon maintains that the Government breached its duty to make a diligent good faith effort because it was negligent in its attempts to locate and apprehend him. In support of this allegation Deleon cites the following occasions when the Government should have found him: when the complaint was first issued on July 24, 1978, since he was in the custody of Texas officials in Edinburgh, Texas, until August 1, 1978 when he was released on bond; during most of the period from August 1, 1978, until August, 1979, since the Government could have determined his whereabouts from the Texas authorities; on one of the numerous occasions when he crossed the U.S.-Mexican border since his name was registered with the Immigration and Naturalization Service (INS) and the Federal Bureau of Investigation (FBI); and during the sixteen month period beginning in October, 1980, until his arrest on February 1, 1982, when he lived with his parents in McAllen, Texas.

In response, the Government submitted ten investigative reports filed by the DEA in connection with their attempts to locate and apprehend Deleon. According to an accompanying affidavit submitted by the DEA these reports disclose the efforts made by the Government to locate Deleon from the time the arrest warrant was issued on July 24, 1978,[3] through December 15, 1981. Based on these reports Government efforts included inquiry of Deleon's whereabouts at his last known place of address; routinely conducted surveillance at various locations known to be frequented by Deleon; checks with INS, FBI and the Chicago Police Department; and the placing of stop orders for Deleon's arrest with the National Crime Information Center, the Treasury Enforcement Communications System, and the Narcotics and Dangerous Drugs Information System. Further review of the reports indicate that the only information received by the Government concerning Deleon's whereabouts was that he was residing in McAllen, Texas on October 2, 1978. The Government maintains that because Deleon did not reside in McAllen, Texas until October, 1980, the efforts made by the Government to locate Deleon as detailed in the reports are all that can be expected. Accordingly, any delay in this case was caused not by Government negligence but by Deleon's fugitive status.

With respect to the contention by Deleon that the Government should have found him while he was in the custody of Texas officials or while he was out on bond, we do not agree. Deleon does not allege that the Government received information from Texas officials concerning Deleon's whereabouts. Furthermore, we do not believe that knowledge of Deleon's location by the Texas authorities should be imputed to the federal government. We also do not agree with Deleon regarding his assertion that the Government should have found and apprehended him on one of the occasions when he crossed the U.S.-Mexican border. In light of the fact that thousands of people both legally and illegally cross the border daily, we believe that such a requirement, without some type of reasonable lead, would place too great a burden on the Government. Finally, in connection with

---

**3.** The first report, dated January 18, 1979, refers to the arrest warrant issued on the complaint having occurred on "September 24, 1978." This is obviously an error as the correct date was July 24, 1978. The DEA reports were prepared at approximately six month intervals.

Deleon's allegation that the Government should have found him in McAllen, Texas, where he was living with his parents, we note that although the Government was informed that he was residing in McAllen on October 2, 1978, Deleon did not reside in McAllen, according to his own allegations, until his parents moved from Reynosa, Mexico, to McAllen in October, 1980. Since we believe it to be unreasonable to expect the Government to wait for Deleon in McAllen for two years, we also disagree with Deleon on this point.

With respect to the second factor, we note that since Deleon did not allege that the Government was in fact aware of his location or that the Government deliberately delayed in apprehending him, and based on the ten DEA investigative reports which indicate the Government received no reasonable information concerning Deleon's location, we conclude that any delay which occurred was not the result of failure by the Government to make a diligent good faith effort to find Deleon.[4] Rather, it was the result of Deleon's fugitive status.[5]

The third factor is the nature of the defendant's assertion of his right to a speedy trial. Because Deleon asserted his right on March 11, 1982, after the alleged period of improper delay and only thirty-nine days before the commencement of trial, this factor does not weigh heavily, if at all, in his favor.

The fourth and final factor is prejudice to the defendant because of the delay. With respect to this factor Deleon notes that according to *Moore v. Arizona*, 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183 (1973), an affirmative showing of prejudice by the defendant is unnecessary. Thus, Deleon simply asserts that because of the delay his defense has been impaired. Deleon goes on to cite, however, one example of prejudice because of the delay; that is the fact that he was unable to locate a co-defendant named Debra Thomas who would have testified, according to Deleon, that he was not involved in the heroin conspiracy for which he has been charged.

 In regard to the inquiry into prejudice the Supreme Court has offered the following guidelines:

A fourth factor is prejudice to the defendant. Prejudice, of course, should be asserted in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.

*Barker v. Wingo, supra,* 407 U.S. at 532, 92 S.Ct. at 2193. More recently, the Supreme Court has elaborated on these guidelines as follows:

The Sixth Amendment right to a speedy trial is ... not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incar-

---

**4.** The authorities relied on by Deleon with regard to the reason for delay, are inapposite to this case. In *United States v. Salzmann,* 417 F.Supp. 1139 (E.D.N.Y.), aff'd, 548 F.2d 395 (2d Cir.1976), the Government specifically knew the defendant's location outside the jurisdiction but failed to take any action to bring the defendant within its jurisdiction so as to conduct a speedy trial. In *United States v. Black,* 416 F.Supp. 59 (M.D.Fla.1976), the Government had recovered the defendant's billfold which contained the defendant's student identification card from the university where the defendant was enrolled full time and the credit cards of the defendant's father which gave the defendant's father's permanent address. Nevertheless, the Government ignored such promising

leads which would have taken them straight to the defendant.

**5.** The Supreme Court of the United States has defined the term fugitive as follows:

To be regarded as a fugitive from justice it is not necessary that one shall have left the state in which the crime is alleged to have been committed for the very purpose of avoiding prosecution, but simply that, having committed there an act which by the law of the State constitutes a crime, he afterwards has departed from its jurisdiction and when sought to be prosecuted is found within the territory of another state.

*Hogan v. O'Neill,* 255 U.S. 52, 56, 41 S.Ct. 222, 223, 65 L.Ed. 497 (1921).

ceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges. *United States v. MacDonald,* 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982).

In view of these guidelines we note that, with respect to the first area of interest, to prevent oppressive pretrial incarceration, Deleon was not arrested with regard to charges in this proceeding until February 1, 1982. Thus, he was not incarcerated for 42 of the 44½ month delay. In regard to the second area of interest, "anxiety and concern of the accused," Deleon, according to his own allegations, was totally unaware of any charges pending against him in this case until his arrest on February 1, 1982. Thus, he was not prejudiced under the second area of interest for 42 of the 44½ month delay. Finally, with respect to the third area of interest, to limit the possibility that the defense will be impaired, we note, upon review of trial testimony, that through the testimony of the DEA agent who took part in the transaction and negotiations supporting the conviction, the corroborative testimony of other DEA agents in surveillance of the same transaction and negotiations, and from photographs taken by the DEA agents of the heroin distribution, the record strongly supports the jury's conclusions. In contrast, the record shows that Deleon's alibi witness, Debra Thomas, was not even present at the transaction and negotiations supporting the conviction. Based upon our review, we do not believe Deleon was substantially prejudiced under the third area of interest.

With respect to the fourth factor, based on the above analysis in light of the record upon completion of the trial, we do not believe Deleon's defense was impaired so as to prejudice him in this case.

After balancing the four factors listed in *Barker v. Wingo,* we conclude that there has been no denial of Deleon's constitutional right to a speedy trial.

## II

### *Rule 48(b) Motion*

Deleon also claims that because of the 44½ month delay the District Court also erred by refusing to dismiss the indictment under Federal Rule of Criminal Procedure 48(b). With respect to this contention, "Rule 48(b) is a codification of the inherent power of a court to dismiss a case for want of prosecution," Note of the Advisory Committee following 18 U.S.C.A., Rule 48, but it is not circumscribed by the Sixth Amendment. *Mann v. United States,* 304 F.2d 394, 398 (D.C.Cir.), *cert. denied,* 371 U.S. 896, 83 S.Ct. 194, 9 L.Ed.2d 127 (1962). However, Rule 48(b) "clearly is limited to post-arrest situations." *United States v. Marion,* 404 U.S. 307, 319, 92 S.Ct. 455, 462, 30 L.Ed.2d 468 (1971). Since Deleon was arrested in McAllen, Texas, on February 1, 1982, and the jury trial began on April 19, 1982, we find no unnecessary delay in bringing Deleon to trial after he was arrested. Therefore, we find no abuse of discretion by the District Court in denying his Rule 48(b) motion. *United States v. Barney,* 550 F.2d 1251, 1254 (10th Cir.1977); *United States v. Aberson,* 419 F.2d 820 (2nd Cir.), *cert. denied,* 397 U.S. 1066, 90 S.Ct. 1497, 25 L.Ed.2d 687 (1970); *Hodges v. United States,* 408 F.2d 543 (8th Cir.1969).

### *Conclusion*

For the foregoing reasons, the conviction of the defendant Deleon is hereby AFFIRMED.