Patrick M. CATON, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 84–256.

Supreme Court of Wyoming.

Nov. 25, 1985.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

CARDINE, Justice.

In a trial to the court, Patrick Caton was convicted of aggravated homicide by vehicle. His appeal of the conviction presents three questions which we must determine. First, was he denied a speedy trial? Second, does the vehicular homicide statute under which he was convicted apply when the victim is a pedestrian?[1] And, finally, is that statute unconstitutionally vague?

We affirm.

### FACTS

On July 10, 1983, a police officer observed appellant speeding within the Pinedale town limits. The officer stopped appellant and ordered him out of his pickup truck. Rather than complying with the order, appellant drove off and a chase began.

The officer stated that the chase started with appellant at least a block and a half ahead of him. The officer said that he allowed the gap to widen to avoid a dangerous situation, and, at the end of the chase, the gap between the two vehicles was about four blocks. An eyewitness to the chase, Ross Hocker, contradicted the officer's version of the incident, stating that the two cars were separated by only one to three car lengths at one point in the chase.

The chase ended with appellant's pickup truck going off the road at a curve and hitting a gatepost which John Coryell, an innocent bystander, was either on or climbing over. Coryell was killed. There is no dispute over the fact that appellant, at the time, had a blood alcohol level exceeding .10 percent.[2]

Gerald R. Mason of Mason & Twichell, Pinedale, for appellant (defendant).

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Mary B. Guthrie (argued), and John W. Renneisen, Sr. Asst. Attys. Gen., for appellee (plaintiff).

1. The statute involved, § 6-2-106(b), W.S.1977 (June 1983 Replacement), has been amended by the legislature in 1984. The statutory question presented in this case is relevant only to this case and a companion case, *Meadows v. State*, 708 P.2d 1250, which we also decide today.

2. Section 31-5-233(b)(iii), W.S.1977, provided that a blood alcohol content in excess of .10 percent raised a presumption that the motorist was driving while under the influence.

A criminal complaint was filed on July 19, 1983, charging appellant with a violation of the aggravated vehicular homicide statute, § 6–2–106(b), W.S.1977. The appellant provisionally waived a preliminary hearing and was immediately bound over to the district court. On August 8, 1983, the district court certified to this court the question of the constitutionality of the vehicular homicide statute. Citing *State v. Rosachi*, Wyo., 549 P.2d 318 (1976), we declined to issue an advisory opinion and remanded the case to the district court on August 31, 1983.

The case then began a tortuous course which resulted in the filing of three different informations and numerous changes of venue from Sublette County to Teton County and back to Sublette County again. Eventually a trial took place on August 29, 1984, over a year after the homicide. Because a substantial speedy trial issue is raised, we must detail the relevant procedural steps.

After our August 31 remand, little occurred until October 28. On that date, the district court set the trial for January 25, 1984, and ordered that a preliminary hearing be held within a month. Before the preliminary hearing could be held, however, the prosecutor decided that the vehicular homicide statute might be unconstitutional and filed a complaint charging the appellant with involuntary manslaughter. The preliminary hearing was held on November 28 on the manslaughter charge. The vehicular homicide information remained pending.

The parties appeared before the district court on December 22 to argue a motion by the defendant to dismiss both the manslaughter and vehicular homicide informations, the latter on speedy trial grounds. The district court dismissed the vehicular homicide information and ordered that the case proceed under the manslaughter statute.

The prosecutor next received an unpublished opinion from the attorney general suggesting that he was charging the appellant under the wrong statute. A motion was filed seeking dismissal of the manslaughter information and allowing a refiling of the vehicular homicide charge. The court set a hearing on that motion for January 24, and the trial was postponed.

The appellant had subpoenaed his chief witness, Ross Hocker, for the January trial date, but after learning of the postponement, advised Hocker that he need not appear. The appellant later was unable to subpoena Hocker and lost his witness.

At the January hearing the appellant again raised his speedy trial objections. The district court ruled that the defendant had not been prejudiced, that the State had proceeded with all due diligence, and, therefore, the appellant's right to a speedy trial had not been violated. The trial on the vehicular homicide charge was set for April 2.

Between January and March there was a preliminary hearing on the vehicular homicide charge and thereafter an arraignment. On March 7 the trial was again delayed when the appellant, the prosecutor, and the district court agreed to move the trial to August 29, pending the outcome of plea negotiations.

The case was tried to the court on August 29, 1984, the appellant having waived his right to a jury trial. Pursuant to stipulation, all of the testimony, including that of Ross Hocker, was summarized and presented to the court in that form. On the only disputed issue, the court found that the homicide was proximately caused by the appellant's drunk driving rather than by the alleged hot pursuit by the police officer. The court sentenced the appellant to a term of five to ten years in the Wyoming State Penitentiary.

### SPEEDY TRIAL

■ Article 1, § 10 of the Wyoming Constitution and the Sixth Amendment to the federal constitution guarantee a speedy trial to the accused.[3] *Phillips v. State*, Wyo.,

---

**3.** Article 1, § 10, Wyoming Constitution provides: "In all criminal prosecutions the accused

597 P.2d 456, 460 (1979). The same four-part balancing test applies under both the Wyoming and federal speedy trial provisions. Thus, in determining whether a post-accusation delay occurred which necessitates reversal, we look to the length of the delay, the reason for delay, the defendant's assertion of his right to a speedy trial, the prejudice to the defendant, and any other relevant circumstances. *Cherniwchan v. State*, Wyo., 594 P.2d 464, 468 (1979), citing *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

### Length of the Delay

 The speedy trial period begins to run when the complaint is filed. *Estrada v. State*, Wyo., 611 P.2d 850, 853 (1980). In this case, the first complaint was filed on July 19, 1983. The speedy trial period was interrupted nineteen days later when, on the agreement of both parties, the district court reserved the constitutional question for our consideration. We remanded the case on August 31, and at that point the running of the speedy trial period commenced again. No further action in the case occurred until the October 28 order by the district court setting trial and providing for a preliminary hearing. There is no indication in the record that appellant was responsible for the delay that occurred between the August 31 remand and the October 28 order. We will, therefore, include that 58-day period in our speedy trial calculation.

 From October 28 until January 24, the appellant was under continuous public charge for the homicide. The fact that the vehicular homicide charge was dismissed and supplanted by a manslaughter information (with some overlap) does not affect our speedy trial calculation. *United States v. MacDonald*, 456 U.S. 1, 102 S.Ct. 1497, 1500, 1502–1503 & n. 12, 71 L.Ed.2d 696 (1982), stated that the periods of formal charge by a single sovereign for the same criminal act are tacked even if the charges are different. We must add the 87-day period from October 28 to January 24 to our delay calculation.

The period of delay was briefly interrupted between January 24, when the manslaughter information was dismissed, and January 26, when a vehicular homicide complaint was refiled.[4] The speedy trial clock started again on January 26 and continued until March 7, a period of 40 days. This period of delay was caused by the prosecutor's decision to dismiss the manslaughter charges and refile under the vehicular homicide statute. On March 7, the appellant moved to vacate the April 2 trial setting for plea discussion purposes. Delays for those purposes are excludable, so we will not count any of the period from March 7 until trial. *Tageant v. State*, Wyo., 683 P.2d 667, 669 (1984). In summary, the net delay totals 204 days or a little over six months.

 There is no specific period of delay which by itself causes a speedy trial violation. *Phillips v. State*, supra, 597 P.2d at 460. In *Cook v. State*, Wyo., 631 P.2d 5, 11 (1981), we held that Rule 204 of the Uniform Rules of the District Courts of the State of Wyoming,[5] which mandates a

---

shall have the right * * * to a speedy trial * *." The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *."

**4.** In *MacDonald v. United States*, 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982), the Supreme Court held that the delay that occurs between dismissal of formal charges and refiling does not count in speedy trial calculations. At least one state court has explicitly adopted that holding for the speedy trial clause of its state constitution. *State v. McCrary*, 100 N.M. 671, 675 P.2d 120 (1984).

**5.** Rule 204, Uniform Rules for the District Courts of the State of Wyoming, has been renumbered since *Cook v. State*, Wyo., 631 P.2d 5 (1981) when it was identified as Rule 22. Rule 204 provides:

"(a) It is the responsibility of court and counsel to insure to each person charged with crime a speedy trial.

"(b) A criminal charge shall be brought to trial within 120 days following the filing of information or indictment.

"(c) The following periods shall be excluded in computing the time for trial:

"(1) All proceedings related to the mental illness or deficiency of the defendant.

**1265**

trial within 120 days after information or indictment, is not exclusive. A violation of this rule is one of the factors to be considered along with the other factors in the balancing test in determining whether the delay violated appellant's speedy trial right. A delay which violates the rule may be justified by the other balancing-test factors in a proper case. *Cook v. State,* supra at 10.

■ The most we can say about the delay in this case is that it is sufficient to trigger further analysis of the speedy trial factors, but it is not so outrageous that it should weigh heavily in the final analysis. See *Phillips v. State,* supra, 597 P.2d at 460, and *Estrada v. State,* supra, 611 P.2d at 853, in which we found that similar delays merely triggered further analysis.

### Reasons for the Delay

■ The State argues in its brief that the prosecutor had a good reason to cause delay and that the charges were justifiably dismissed and refiled because he "was faced with solving a conundrum which had been haunting legal scholars for some time." Later in its brief, however, the State, contrary to its claim that the statute had been haunting legal scholars, states that the vehicular homicide statute was not vague because, "[a]ny man of common intelligence could read it and conclude that he will be prosecuted if he drinks, drives and as a consequence causes the death of another person." We cannot accept the

inconsistency of these arguments. Later in this opinion we will explain why we think the vehicular homicide statute was clear enough to avoid a vagueness attack. In light of that determination, we find that the prosecutor did not have good reason to vacillate on the charges and thereby delay the trial.

It is not unusual for a criminal statute to be susceptible to several interpretations when subject to the scrutiny of lawyers who are trained to look for nuances. When faced with such a statute, the prosecutor must do his research, make a decision, and file charges. Certainly, if new facts come to light or an intervening appellate decision is released, the prosecutor may be forced to alter his charge. That was not the case here. Instead, the prosecutor simply changed his mind based on facts and law that were available from the outset. The prosecutor, not the supreme court and not the district court,[6] must decide how to charge a defendant. If he later changes the charge because he changes his mind, then any delay that results is unnecessary.

After we have determined the reason for delay, we must try to discover the prosecutor's motives for delay. We pointed out in *Estrada v. State,* supra, 611 P.2d at 854, that an innocent unnecessary delay will not weigh as heavily against the prosecution as a deliberate unnecessary delay. In the case at bar, the record shows that the prosecutor did not cause delay because of

"(2) Proceedings on another charge.
"(3) Delay granted by the court pursuant to Section (d).
"(4) The time between the dismissal and the refiling of the same charge.
"(5) Delay occasioned by defendant's change of counsel or application therefor.
"(d) Continuances may be granted as follows:
"(1) On motion of defendant supported by affidavit of defendant and defendant's counsel.
"(2) On motion of the prosecuting attorney or the court if:
"(i) The defendant expressly consents; or
"(ii) The state's evidence is unavailable and the prosecution has exercised due diligence; or

"(iii) Required in the due administration of justice and the defendant will not be substantially prejudiced.
"(e) Upon receiving notice of possible delay the defendant shall show in writing how the delay may prejudice his defense.
"(f) If the defendant is unavailable for any proceeding at which his presence is required, the time period shall begin anew upon defendant's being available."

6. The prosecutor sought an advisory opinion from this court on the constitutional question. We properly denied that request for the reasons that we outlined in *State v. Rosachi,* Wyo., 549 P.2d 318, 322 (1976). At one stage in the proceeding, the prosecutor also attempted to improperly move the district court into an advisory stance.

improper motives. For example, the prosecutor stipulated to the presentation of Ross Hocker's testimony to the trial court. He would not have made that stipulation if he had intended the delays to prevent Hocker from appearing. Moreover, the prosecutor diligently pursued the action in every way not related to his indecision over the proper charge. While the unnecessary delay is chargeable to the prosecution, it does not tip the balance substantially toward the appellant.

### Defendant's Assertion of His Right

 There is no question but that appellant asserted his right to a speedy trial in a timely fashion. On December 22, 1983, the appellant moved for dismissal on speedy trial grounds. That was his first chance to assert his right after learning that the trial would not take place on January 25 as scheduled. The appellant raised the speedy trial motion again at the January 24 hearing. There is no merit to the State's argument that the appellant waived his speedy trial protections.

### Prejudice

A key element of the speedy trial balancing test is the prejudice suffered by the defendant caused by delay in bringing him to trial. We have followed the United States Supreme Court's position that prejudice is not an absolutely essential element. *Robinson v. State*, Wyo., 627 P.2d 168, 171 (1981), citing *Moore v. Arizona*, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973). But, in most cases, prejudice is a very important factor. See, e.g., *Estrada v. State*, supra, 611 P.2d at 855.

We have never expressly decided whether the defendant has the burden of proving prejudice or, instead, whether the prosecution must prove a lack of prejudice. In *Cherniwchan v. State*, supra, 594 P.2d at 469, we cited with approval Justice Brennan's discussion in *Dickey v. Florida*, 398 U.S. 30, 90 S.Ct. 1564, 1569–1578, 26 L.Ed.2d 26 (1970) (Brennan, J., concurring). Justice Brennan stated that in cases of extreme delay prejudice should be pre-

sumed. This proposition makes sense because the kinds of prejudice produced by long delays may be substantial even if the defendant's ability to defend himself is not impaired. The defendant's social relations, freedom of movement, and anxiety over public accusation are seriously affected when the delay is prolonged. These effects are precisely the kinds of prejudice that would be difficult for a defendant to demonstrate if he had the burden of proving prejudice.

 Short delays, on the other hand, rarely produce the nebulous impacts discussed above. Instead, if there is a prejudice from a short delay, it normally is one which directly impairs the defense. The defendant can affirmatively prove such an impairment. Therefore, we also hold that until delay exceeds a point where there is a "probability of substantial prejudice," the burden of proving prejudice should remain with the accused. *Dickey*, supra, 90 S.Ct. at 1577 (Brennan, J., concurring). In this case, the delay never reached a point at which substantial prejudice became probable. The burden of showing prejudice is, therefore, on the appellant.

 The appellant argues that he was prejudiced because he was unable to produce his chief witness, Ross Hocker, once the January trial setting was vacated. He claims that if the trial had been held in January, Hocker would have honored his subpoena and testified. The appellant also claims that he would not have waived the jury trial.

According to the stipulated testimony of Hocker, which was eventually presented to the trial judge, Hocker would have disputed the officer's version of the chase. Appellant argues that Hocker's testimony would have convinced the jury that the chase was a hot pursuit. The jury would then have inferred that the distraction of the chase, rather than the appellant's drunkenness, proximately caused the homicide.

This allegation of prejudice is too tenuous to satisfy the appellant's burden.

First, the appellant must share some of the blame for Hocker's disappearance. It was appellant who released Hocker from the subpoena. Had he required his appearance on the date set, the court could have ordered his appearance at trial.[7] Second, if Hocker had testified live, he would have been contradicted by the officer's live testimony. According to the stipulation, the synopses accurately summarized the testimony that the officer and Hocker would have given if they had appeared personally. The trial judge believed the officer's summary and discounted the Hocker version. There is no reason why we should assume that a judge or jury would have believed Hocker if the testimony had been live. Third, the appellant was never forced to try the case before a judge. He could have presented the summaries to a jury if he chose to do so. Fourth, even if the hypothetical jury accepted Hocker's story and disregarded the officer's, the jurors could still have concluded that the appellant's drunkenness proximately caused the victim's death. The closeness of the chase does not alter the fact that the appellant was drunk throughout. In fact, his drunkenness would be more likely to cause an accident in a close chase than in a more restrained pursuit. We are not convinced that the trial delay alone led to Hocker's absence. Nor are we convinced that Hocker's absence impaired the defense.

 A defendant can be prejudiced by pretrial anxiety and oppressive pretrial incarceration as well as by impairment of his defense. *Estrada v. State*, supra, 611 P.2d at 855. In this case, the appellant was not prejudiced by incarceration because he was free on bond during the entire proceeding. He may have had some anxiety over the charge, but it is hard to be sympathetic when his only defense was that he killed Coryell during a police chase of his own making. Moreover, at least seven months of the thirteen-month total delay were caused by defense motions.

In summary, the appellant had the burden of proving that he was prejudiced by the delay because the delay was too short to raise a presumption of prejudice. He has failed to carry that burden.

### Applying the Balancing Test

 Weighing the four elements of the balancing test, we find that the appellant's right to a speedy trial has not been violated. Although there was sufficient unnecessary delay to trigger the balancing test, the delay was not outrageous. And while the prosecutor did not have a good reason for the delay he caused, at least his motives were legitimate. The appellant preserved his speedy trial right by raising timely objections. But the appellant could not prove prejudice. In this case, the lack of prejudice was sufficient to overcome a relatively short, although unnecessary, delay.

### CONSTRUCTION OF THE VEHICULAR HOMICIDE STATUTE

The appellant claims that the aggravated vehicular homicide statute under which he

---

**7.** If Hocker was in Wyoming between January 1984 and August 1984, the trial judge could have ensured his appearance by issuing an attachment to the sheriff. Hocker would have been brought before the court. The court could then have required that Hocker post a bond to ensure his appearance at trial. § 1–12–107, W.S. 1977.

Even if Hocker had gone to Oklahoma as the appellant claims, he was still subject to a Wyoming subpoena. Oklahoma has adopted the Uniform Act to Secure Attendance of Witnesses from Without a State in Criminal Proceedings. 22 Okla.Stat.Ann. § 722 (1969). Under the Oklahoma version of the act, the Oklahoma court will summon a witness, hold a hearing, and order the witness to appear in the state where he is needed. Oklahoma will do so as long as the trial state has adopted the Act and will perform the same service for Oklahoma. Wyoming has adopted the Act, § 7–11–407, W.S. 1977. The Oklahoma version of the act has no distance limitation. Hocker could have been summoned from anywhere in Oklahoma to appear in Jackson, Wyoming for appellant's trial. Finally, Oklahoma will take a witness into custody if necessary to ensure his appearance at the trial in the requesting state. 22 Okla.Stat.Ann. § 722 (1969).

We held in *Montez v. State*, Wyo., 670 P.2d 694, 699 (1983), that a defendant cannot avoid the consequences of his failure to produce a witness for trial when he has had ample opportunity to subpoena the witness. That principle applies in this case.

was convicted does not apply when the victim is a pedestrian. He supports this position with a two-part analysis. First, he argues that the statute under which he was charged, § 6–2–106(b), W.S.1977, supra, is susceptible to only his interpretation and, therefore, cannot be subjected to rules of construction which apply only after a statute is found to be ambiguous. Second, he argues that even if the statute is ambiguous, the rules of statutory construction support his interpretation.

▮ We disagree with the appellant's first argument and find that the statute is susceptible to two interpretations. It states in relevant part:

"A person is guilty of aggravated homicide by vehicle * * * if, while driving a motor vehicle in violation of W.S. 31–5–233, he unlawfully causes the death of another person while driving a motor vehicle and the violation is the proximate cause of the death."[8]

The statute could mean what appellant suggests, i.e., since the phrase "while driving a motor vehicle" appears right after the words "another person," it describes what that other person, the victim, must have been doing at the time of his death. On the other hand, the phrase "while driving a motor vehicle" could refer to the defendant at both places in which it appears in the statute. The phrase first appears as part of a clause which links the defendant's act of driving with his drunken condition. It appears a second time at a place where it could be linking the defendant's act of driving with the time of the victim's death.[9] In other words, the phrase's second appearance could mean that the defendant must be driving a motor vehicle at the time of the accident which causes the victim's

death. Because this statute is susceptible to more than one meaning, we consider it ambiguous and must resort to rules of statutory construction to ascertain the legislature's intent.[10] *Attletweedt v. State,* Wyo., 684 P.2d 812, 814 (1984).

In their briefs, the parties have offered numerous rules of statutory construction as easy solutions to the problem of interpreting this statute. If we applied every rule offered, we would finish our analysis in a hopeless deadlock. In *Longacre v. State,* Wyo., 448 P.2d 832, 833 (1968), we noted that "rules of statutory construction are usually only guidelines to aid courts in arriving at the legislative intent. The ultimate thing to be decided is what the legislature intended." We must approach the rules of construction from this viewpoint.

▮ We outlined several useful rules of construction in State ex rel. *Motor Vehicle Division v. Holtz,* Wyo., 674 P.2d 732, 736 (1983), when we said, "the court must look to the mischief the statute was intended to cure, the historical setting surrounding its enactment [and] the public policy of the state * * * to ascertain a legislative intent that is reasonable and consistent."

Application of the first rule, the mischief to be cured, favors the State's interpretation. Vehicular homicide statutes are generally intended to reduce the "carnage on the highways" by punishing those who kill through the reckless use of motor vehicles. *State v. Sodergren,* Wyo., 686 P.2d 521, 523 (1984). The Wyoming statutory scheme divides vehicular homicide into two types. The first type includes homicides caused by the "criminal negligence" of the driver. They are prohibited by subsection

---

8. Section 6–2–106(b), W.S. 1977.

9. Under this interpretation offered by the State, the critical phrase has two distinct utilities even though it refers to the defendant's act of driving each time. We can therefore accept the State's interpretation without construing the phrase's second appearance to be meaningless. See *Wetering v. Eisele,* Wyo., 682 P.2d 1055 (1984), for a discussion of the rule which prevents constructions that void statutory language.

10. In *State v. Sodergren,* Wyo., 686 P.2d 521, 529 (1984), Chief Justice Rooney, speaking for a majority of this court, pointed out that the statute was ambiguous enough to require an unquestioned expression of legislative intent although he thought we "may be able to ascertain legislative intent." The legislature responded to the Chief Justice's invitation and altered the statute but not before this case had arisen under this ambiguous version.

(a) of § 6–2–106 and provide for a $2,000 fine and/or a year in jail. They are not restricted to vehicular homicides in which other drivers are the victims. Second, are the "aggravated" vehicular homicides which are governed by subsection (b) of § 6–2–106. The legislature has determined that these homicides caused by drunk drivers constitute a mischief more deserving of heavier punishment than mere negligent homicides. The legislature has provided a penalty of up to twenty years in the state penitentiary to deter this conduct.

If the aggravated vehicular homicide subsection punished only those drunk drivers who killed other drivers, it would be inconsistent with the legislative decision to punish drunk drivers more severely than mere negligent drivers. Moreover, the appellant has not offered a single reason why the legislature would distinguish between the types of victims killed by drunk drivers and those killed by negligent drivers. It would be absurd for the legislature to punish drunk drivers harshly when they kill other drivers and yet declare open season on such persons as passengers, pedestrians, and bystanders. We stated in *State v. Sodergren,* supra at 527, that "statutes are not to be interpreted to produce absurd results."

The second rule of construction from the Holtz case—the historical setting surrounding the statute's enactment—also supports the State's interpretation. In *State v. Sodergren,* supra at 529, Chief Justice Rooney called attention to the ambiguity created when the legislature included the phrase "while driving a motor vehicle" at two places in the statute. Without interpreting the statute, he urged the legislature to clean up the wording so that there would be an "unquestioned expression of legislative intent." The legislature responded by deleting the phrase "while driving a motor vehicle" where it appeared after "another person." Session Laws of Wyoming, 1984, Ch. 44, § 2. The legislature thus made it clear that it never intended to limit the statute's application to cases in which the victims were drivers.

We have repeatedly held that "subsequent legislative corrective action" is a valuable tool of statutory construction. *Department of Revenue and Taxation v. Irvine,* Wyo., 589 P.2d 1295, 1300 (1979), and cases cited therein. "That is particularly so and entitled to great weight when it follows immediately after controversies that have arisen as to true construction." Id. at 1300. In this case, Chief Justice Rooney raised an issue about the statute's meaning and the legislature responded quickly to address that issue. This statutory history provides significant support for the State's interpretation of the statute.

The final useful rule of construction mentioned in Holtz is the public policy of the state. Surely it is not this state's public policy to punish a drunk driver who kills another driver more severely than a drunk driver who runs down an innocent pedestrian. We will not compound a temporary oversight in legislative drafting by interpreting the ambiguity in such an absurd fashion.

The appellant offers several rules of construction to support his interpretation. He argues that "if a penal statute admits of two reasonable and contradictory constructions, that which operates in favor of the party accused * * * is to be preferred." He assumes that his interpretation is a reasonable construction which will bring this rule into play. We disagree. In *Keser v. State,* Wyo., 706 P.2d 263, 266 (1985), we stated that " 'while generally speaking penal statutes are to be strictly construed, they need not be given overnarrow meaning in disregard of the obvious purpose of the legislative body * * *.' " (quoting from *State v. Stern,* Wyo., 526 P.2d 344, 347 (1974) ). The appellant's construction is unreasonable, and we will not accept it in disregard of the legislature's purpose.

Appellant also argues that the State's interpretation would render the phrase "while driving a motor vehicle" superfluous because it appears twice. We have answered that contention when we explained that the phrase has different utilities at each location in the statute. It first

links the defendant's act of driving to his drunkenness and later links the defendant's act of driving to the time of the accident. The appellant's rule of construction has no application here.

In summary, we believe that the legislature intended the aggravated vehicular homicide statute to apply to a case like this in which a drunk driver kills a pedestrian. The status of the victim is irrelevant.

## VAGUENESS

The Eighth Circuit Court of Appeals has stated, "[a] statute is not necessarily void for vagueness simply because it may be ambiguous or open to two constructions." *Williams v. Brewer*, 442 F.2d 657, 660 (8th Cir.1971). We recently made a similar observation in *Keser v. State*, supra, 706 P.2d at 266: "A statute * * * is not considered vague to the extent of being unconstitutional merely because a reviewing court believes the statute could have been drafted with greater precision." See also, *Sorenson v. State*, Wyo., 604 P.2d 1031 (1979). The point is that if ambiguous penal statutes were always vague, we would never have to resort to rules of construction for such statutes. A penal statute found to be ambiguous would ipso facto be vague and, therefore, unconstitutional. That proposition is not and cannot be law.

In determining whether a statute is so vague as to violate due process, we must undertake an independent inquiry. A statute violates the definiteness requirement of due process if it

"'* * * fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'" *Keser v. State*, supra, 706 P.2d at 265–266 (quoting *United States v. Harriss*,

347 U.S. 612, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954)).

The "fair notice" test applies equally under Article 1, § 6 of the Wyoming Constitution and under the Fourteenth Amendment to the United States Constitution.[11]

■■■■ The State argues that this statute clearly warns men of ordinary intelligence that they should not drink and drive and is, therefore, not vague. This would be enough warning if the statute merely applied to drunk drivers. But the statute at issue is a homicide statute that provides much higher penalties than our driving-while-under-the-influence statute. The statute requires that death be caused by drunk driving, and its penalties cannot be imposed without that death. That element of the offense must be reasonably apparent to men of ordinary intelligence. See *Armijo v. State*, Wyo., 678 P.2d 864, 868 (1984).

The appellant argues that the death element of the statute is so unclear that its meaning is not apparent to men of ordinary intelligence. He cites our decision in *State v. Stern*, Wyo., 526 P.2d 344, 351–352 (1974), in which a three-justice majority stated:

"[I]f able counsel and this Court must argue about questions as to what kind of conduct is proscribed, it certainly follows that men of common intelligence must necessarily grope as to the meaning and would have no understanding at all as to what acts were criminal."

We have recently declined to follow this simple but overly rigid logic in *Sorenson v. State*, supra, 604 P.2d at 1033. In Sorenson we pointed out that statutes can be clear enough even if " 'trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.' " (quoting from *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498

---

11. Article 1, § 6, Wyoming Constitution provides: "No person shall be deprived of life, liberty or property without due process of law." The Fourteenth Amendment to the United States Constitution provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law * * *."

(1957) )). If every statute whose meaning was argued before this court were necessarily unclear to the common man, then our statute book would be reduced to a few pages rather than thousands of pages. " ' "[T]he Constitution does not require impossible standards." ' " *Sorenson,* supra 604 P.2d at 1033.

We believe that the aggravated vehicular homicide statute is clear enough for the man of ordinary intelligence to understand. The ordinary man, asked to read § 6–2–106(a) and (b), W.S.1977, would see that subsection (a) applies to all negligent vehicular homicides regardless of whether the victim is driving at the time of the homicide. The ordinary man would see that subsection (b) increases the penalties when the driver is drunk rather than merely negligent. The reader might notice that the phrase "while driving a motor vehicle" appears twice. He might also see that the phrase could be interpreted to require that the victim be another driver. His next reaction would undoubtedly be, "it can't mean that. That would be absurd." He would then conclude that the second appearance of "while driving a motor vehicle" refers to the defendant just as the clause "while driving a motor vehicle in violation of W.S. 31–5–233" refers to the defendant. In essence, an ordinary intelligent person would apply common sense to the statute. He would not have to guess at the meaning of the statute because he would discount appellant's interpretation. *Sanchez v. State,* Wyo., 567 P.2d 270, 274 (1977). The aggravated vehicular homicide statute at issue is not unconstitutionally vague.

In conclusion, we hold that the appellant received a speedy trial and was prosecuted under a statute that applied to his homicide involving a pedestrian. We also hold that the statute was not unconstitutionally vague.[12]

Affirmed.

---

12. The appellant has offered a fourth argument which we need only mention in passing. He claims that a criminal defendant cannot be prosecuted under a statute that was effective at the time of the criminal offense but repealed before judgment. Section 8–1–107, W.S. 1977, answers that contention. It provides: "If a statute is repealed or amended, the repeal or amendment does not affect pending actions, prosecutions or proceedings, civil or criminal."