Judith **CORYELL, as Personal Representative for and the Administrator of the Estate of John L. Coryell, Deceased, and Individually on behalf of herself, Judith Coryell, Appellant (Plaintiff),**

v.

**TOWN OF PINEDALE, James P. Frey, II, and Win Farnsworth, Appellees (Defendants).**

**No. 86–85.**

Supreme Court of Wyoming.

Nov. 18, 1987.

W. Keith Goody and James K. Lubing, Jackson, for appellant.

Richard E. Day and Stuart R. Day, Williams, Porter, Day & Neville, P.C., Casper, for appellee Town of Pinedale.

Gary M. Greenhalgh, Greenhalgh, Bussart, West & Rosetti, Rock Springs, for appellees Frey and Farnsworth.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

THOMAS, Justice.

The singular question to be resolved in this appeal is whether it was error for the trial court to instruct the jury on the law of joint and several liability in a wrongful death case which arose on July 10, 1983. The appellant briefed a second issue questioning the propriety of an instruction with respect to the lawfulness of pursuit by a police officer, but, at oral argument, appellant advised the court that the second issue was abandoned. We conclude that the trial court did not err in giving the instruction on joint and several liability, and the judgment of the district court is affirmed.

The appellant set forth the following statement of issues in her brief:

"1. Did the trial court err in instructing the jury on the effects of joint and several liability and allowing defense counsel to comment thereon?

"2. Did the trial court err in instructing the jury that 'it was lawful for Officer Frey to pursue Caton outside the corporate limits?'"

The appellees, Frey and Farnsworth, reiterated the appellant's statement of issues. The Town of Pinedale, as appellee, made a counterstatement of the issues:

"I. The trial court correctly instructed the jury as to the effect of its verdict as required by W.S. § 1-1-114 (1977).

"II. The trial court correctly instructed the jury that a municipal police officer could lawfully pursue a suspect outside his corporate limits pursuant to W.S. § 31-5-1204 (1977)."

On July 10, 1983, John Coryell, the husband of the appellant, was struck and killed near the town of Pinedale by a vehicle driven by one Caton. Caton's conviction of vehicular homicide was affirmed by this court in *Caton v. State*, Wyo., 709 P.2d 1260 (1985). The appellant initiated an action to recover for the wrongful death of her husband and named as defendants Caton, the Town of Pinedale, James P. Frey, II and Win Farnsworth. As reflected in the court's opinion, in *Caton v. State*, supra, Frey is the police officer who was chasing Caton at the time that Caton struck and killed John Coryell. The appellant's theory was that Frey was negligent in chasing Caton at a high rate of speed. The theory against Farnsworth, who was the Pinedale chief of police when Frey was hired and at the time of Coryell's death, was that he was negligent in the hiring and supervising of Frey. The Town of Pinedale was included as a defendant under a theory of respondeat superior. Prior to trial, Caton settled the appellant's claim against him, and he was dismissed from the action. In accordance with the Wyoming law relating to comparative negligence pursuant to § 1-1-109, W.S.1977, Caton was included as an actor in the verdict form with respect to whom negligence should be apportioned. By the special verdict, the jury found Frey and Farnsworth were not negligent and assigned 100 percent of the negligence to Caton.

After the evidence was closed, the district court gave two instructions to the jury, over the appellant's objections. The first instruction, which was one paragraph in a longer instruction defining generally the law of negligence, related to the law of joint and several liability. The court advised the jury:

"When the concurring negligence of two or more persons causes an injury, each person is wholly liable to the plaintiff regardless of the relative degree to which each contributes to the injury."

The second instruction to which appellant objected advised the jury that it was lawful for Frey to pursue Caton outside the corporate limits of the Town of Pinedale. This appeal is premised upon the error of the court in giving the first instruction.

Appellant relies upon cases which addressed directly the propriety of advising a jury of the consequences of its verdict in assessing comparative negligence. The history of the instances in which this court and the legislature have addressed that issue is relatively brief. In *Woodward v. Haney*, Wyo., 564 P.2d 844 (1977), we held that it was improper to inform the jury of the consequences of its verdict in assessing comparative negligence. That holding was justified by the presumption that the Wyoming legislature, in adopting the comparative negligence statute from the state of Wisconsin, intended that it should be given the same construction as the courts of Wisconsin had given to the comparative negligence statute at the time of its enactment in Wyoming. In that opinion, we noted the enactment by our legislature of Ch. 10, S.L. of Wyoming 1976, which created § 1-7.7, W.S.1957, Interim Supp.1976, the last sentence of which provided "[i]n all cases the court shall inform the jury of the consequences of its verdict." Although the balance of that statutory provision was declared unconstitutional in *White v. Fisher*, Wyo., 689 P.2d 102 (1984), the last sentence was not affected by that provision and remains a part of our statutory law. Chapter 188, § 1, S.L. of Wyoming 1977, appearing as § 1-1-114, W.S.1977.

In *Johnson v. Safeway Stores, Inc.*, Wyo., 568 P.2d 908 (1977), this court held that the phrase "in all cases" found in § 1-1-114, W.S.1977, evinced a clear and commonly understood meaning which justified advising the jury with respect to the effect of its percentage findings of negligence in a comparative negligence case. We distinguished the decision in *Woodward v. Haney*, supra, holding that the statute, § 1-7.7, W.S.1957, Interim Supp. 1976, readopted in Ch. 188, § 1, S.L. of Wyoming 1977, found in § 1-1-109, W.S. 1977, had been amended by implication with the adoption of § 1-1-114, W.S.1977. After the decision in *Johnson v. Safeway Stores, Inc.*, supra, § 1-1-109, W.S.1977, was amended to authorize the court to "[i]nform the jury of the consequences of its determination of the percentage of fault." Chapter 24, § 1, S.L. of Wyoming 1986, now found in § 1-1-109, W.S.1977, Cum.Supp.1986.

The prior holdings of this court have been restricted to advising the jury concerning the effect of the percentages of negligence assigned by the jury to the several defendants in comparative negligence cases. Essentially, this was true of the legislative responses to this court's decisions until the rule of joint and several liability was abolished by the legislature in 1986. Chapter 24, § 1, S.L. of Wyoming 1986, now found in § 1-1-109(d), W.S.1977, Cum.Supp.1986. Prior to the effective date of that legislation, June 11, 1986, the law of joint and several liability had been firmly established in Wyoming. *Chandler v. Dugan*, 70 Wyo. 439, 251 P.2d 580 (1952); *Phelps v. Woodward Construction Company*, 66 Wyo. 33, 204 P.2d 179 (1949); *Hester v. Coliseum Motor Company*, 41 Wyo. 345, 285 P. 781 (1930). We recognize that, as appellant has argued, we have held § 1-1-109, W.S.1977, is efficacious only in those instances in which there is at least some evidence that the plaintiff was contributorily negligent. *Kirby Building Systems v. Mineral Explorations Company*, Wyo. 704 P.2d 1266 (1985); *Palmeno v. Cashen*, Wyo., 627 P.2d 163 (1981). Appellant, relying upon these latter holdings, urges that § 1-1-114, W.S.1977, is limited in a similar manner and cannot be invoked to address those situations in which there is no evidence of contributory negligence by a plaintiff.

Appellant does not contend that the instruction given by the court was an erroneous statement of the law. Her sole claim is that the instruction should not have been given. Authority on the question of advising a jury with respect to joint and several liability is sparse and is found generally within the area of the propriety of advising jurors of the consequences of their findings. In *Kaeo v. Davis*, Hawaii, 719 P.2d 387 (1986), the Supreme Court of Hawaii considered the propriety of advising the jury about joint and several liability in the light of Rule 49(a) of the Hawaii Rules of Civil Procedure, which provides in pertinent part as follows:

" * * * The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue."

That court held that in the light of its rule:

" * * * [T]he trial court, if requested and when appropriate, should inform the jury of the possible legal consequence of a verdict apportioning negligence among joint tortfeasors. An explanation of the operation of the doctrine of joint and several liability in that situation would be consistent with our directive in HRCP 49(a) * * *." *Kaeo v. Davis*, supra, 719 P.2d at 396.

By footnote, that court distinguished the application of Hawaii's statute requiring an instruction to the jury regarding the law of comparative negligence where appropriate. The court did recognize a dichotomy between those courts holding it error to inform jurors of the consequences of their findings and those courts holding that a jury informed with respect to the legal consequences of its verdict is more likely to reach a just result.

The reasoning of the Hawaii court is persuasive with respect to the application of § 1-1-114, W.S.1977. This is particularly true in the light of our emphasis in *Johnson v. Safeway Stores, Inc.*, supra, on

the language "in all cases * * *." We there said:

" * * * [W]e hold that the legislature, by its enactment, manifested a clear intendment for its provisions to apply without exception to personal-injury actions, including those cases brought by '... any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, ...' § 1–7.2(a), supra." [Now found in § 1–1–109, W.S.1977, Cum.Supp.1986.] *Johnson v. Safeway Stores, Inc.*, supra, 568 P.2d at 912.

The words "in all cases" include cases other than those dealing solely with the issue of comparative negligence and percentage of fault, and the quoted language additionally justifies our conclusion that it was not error in this case for the court to give its instruction on the law of joint and several liability.

As a part of the first issue, the appellant argues that counsel erroneously was permitted to describe the consequences of the verdict during closing argument. The record reflects that no objection was made by appellant's counsel to any of the final argument of opposing counsel.

" * * * It is firmly established that improper argument of counsel cannot be raised or urged for reversal in the absence of an objection, * * *." *Joly v. Safeway Stores, Inc.*, Wyo., 502 P.2d 362, 364 (1972).

Other cases hold the same. *Webber v. Farmer*, Wyo., 410 P.2d 807 (1966); *Edwards v. Harris*, Wyo., 397 P.2d 87 (1964). See also *Chrysler Corporation v. Todorovich*, Wyo., 580 P.2d 1123 (1978).

▮ We note, only briefly and for the purpose of explaining appellant's abandonment of the second issue, the provisions of § 31–5–1204, W.S.1977. That statute vests a police officer with authority to arrest as though for a felony in certain misdemeanor cases including:

"(ii) Driving or being in actual physical control of a vehicle while under the influence of alcohol or any substance as prohibited by W.S. 31–5–233;

\*　　\*　　\*　　\*　　\*　　\*

"(vii) Willfully fleeing from or attempting to elude a police officer."

These circumstances were present when Frey was pursuing Caton outside the city limits of Pinedale, and the situation comes within the exception to the usual limitation on a police officer's authority to arrest attributable to his conduct in fresh pursuit of a felon or a suspected felon. *Six Feathers v. State*, Wyo., 611 P.2d 857 (1980); 5 Am.Jur.2d *Arrest* §§ 50–51 (1962); Note, *Power of Peace Officers to Arrest Without Warrant in Wyoming*, 7 Wyo.L.J. 100 (1953). We perceive the appellant's abandonment of this issue as not only prudent but appropriate.

The judgment of the district court is affirmed.

URBIGKIT, J., filed a specially concurring opinion.

URBIGKIT, Justice, specially concurring.

This case is one more instance of the often recurring factual events of a police chase of a well-known, previously convicted drunk driver, this time driving through the town of Pinedale, not unexpectedly coming to a tragic climax when the chased driver loses control of the vehicle and kills an innocent victim unfortunate enough to be in the wrong place at the wrong time.

The adversely decided jury issue of police auto-chase negligence presents a broad array of injured and innocent-victim recovery concerns. Compare *DeWald v. State*, Wyo., 719 P.2d 643 (1986) with Zevitz, *Police Civil Liability and the Law of High Speed Pursuit*, 79 Marq.L.Rev. 2 (1987); Comment, *High-Speed Pursuits: Police Officer and Municipal Liability for Accidents Involving the Pursued and an Innocent Third Party*, 16 Seaton Hall 101 (1986); Alpert and Anderson, *The Most Deadly Force: Police Pursuits*, Justice Quarterly, Vol. 3, No. 1 (March 1986); Koonz and Regan, *"Hot Pursuit"—Proving Police Negligence*, Trial, p. 65 (December, 1985); Costan, *Hot Pursuit: The Innocent Victim's Remedy*, CTLA Forum,

Vol. XVI, No. 6, p. 204 (1986).[1] That specific issue does not come here as an appeal question, since direct objection was not taken to the negligence instruction given and the adverse jury verdict on the instruction settled the result for appeal review. *Burton v. Fisher Controls Company*, Wyo., 723 P.2d 1214 (1986).

The subject to which my concern is consequently directed by this appeal and this court's opinion is the "effect of the verdict" instruction as contendably inaccurate in fact although technically correct in stating the law as raising the difference between "who is liable" and "who will pay."

This court accurately portrays the legislative action in denial of the Wisconsin rule prohibition against informing the jury of the consequence of its verdict in comparative-negligence cases in conjunction with the 50–50 denied-recovery negligence-assessment posture. Smith, *Comparative Negligence Problems with the Special Verdict: Informing the Jury of the Legal Effects of Their Answers*, 10 Land & Water L.Rev. 199 (1975). The Wyoming comparative-negligence statute originally enacted as Ch. 28, S.L. of Wyoming, 1973 made no provision when the "not as great as—fifty-fifty" plaintiff-loses test for recovery was adopted in the comprehensively amended and debated legislative procedure. H.B. 94, Digest of Senate and House Journals 1973, p. 626. The subject of an instruction to inform the jury of the consequence of the verdict first came into Wyoming law as a part of the first-generation medical-malpractice crisis legislation, Ch. 10, S.L. of Wyoming 1976. Comparative negligence was explicitly included in the recodification of Title 1 in Ch. 188, S.L. of Wyoming 1977, where § 1–1–109, W.S.1977 reads:

1. For a current discussion of liability beyond the city limits, see *Lamkin v. Brooks*, La., 498 So.2d 1068 (1986), and Note, *Lamkin v. Brooks: Expanding Municipal Tort Liability Beyond the City Limits*, 61 Tul.L.Rev. 1556 (1987).

2. In the second-generation medical-malpractice crisis, the comparative-negligence statute, Ch. 24, § 1, S.L. of Wyoming 1986, § 1–1–109, W.S. 1977 was rewritten to permit recovery on a 50–50 plaintiff-wins negligence test, and:

"(b) The court may, and when requested by any party shall:

\* \* \* \* \* \*

"(iii) Inform the jury of the consequences of its determination of the percentage of negligence,"

and § 1–1–114, W.S.1977 states:

" \* \* \* Nothing herein shall be construed to prevent any party from arguing to the court or jury the amount of his claim in money. In all cases the court shall inform the jury of the consequences of its verdict."

Through both this statutory development and the corresponding litigation, settlement has occurred in establishment of the requirement that an *accurate* instruction should be given on the effect of the verdict.[2]

My concern in this case arises from the conception of definable legislative intent that the jury should be permitted to know *with accuracy* what the effect of their verdict might be. To the contrary, appellant here contends that the communicated information was "half truth and in misleading form," and essentially untrue. She argues that apportionment of liability among actors is not necessarily the same or may be substantially different from who will pay, namely the insurance carrier as the real party in interest in money risk. To say, even though the obligation rests with insurance companies, that the town or its police officers would pay is factually untrue and is wrong. I agree.

In procedural agreement with the court, I specially concur rather than dissent because the error that I find in the record in final-argument comments is unavailable on appeal in absence of the necessary trial objection. See *Joly v. Safeway Stores*,

"'(b) The court may, and when requested by any party shall:
\* \* \* \* \*
"(B) Inform the jury of the consequences of its determination of the percentage of fault." The new law further provides that each defendant is liable only for that portion of the total dollar amount as may be attributable to his fault.

*Inc.*, Wyo., 502 P.2d 362 (1972), and cases cited in the majority opinion.

In jury-instruction conference, counsel for appellant stated:

"* * * The plaintiff objects to number 9 and, specifically, the plaintiff objects to the second to the last paragraph stating that 'when the concurring negligence of two or more persons causes an injury, each person is wholly liable to the plaintiff regardless of the relative degree to which each contributes to the injury.' That's a definition of joint and several liability. Joint and several liability is clearly a rule of law and it has nothing to do with the jury deliberations nor should it. In fact, it's not even the Court's decision who pays the judgment. As I understand the law, it's the plaintiff's decision who she may pursue in the event that she gets a judgment.

"The reason that we think that this particular paragraph is prejudicial to the plaintiff is that we understand that the defendants are going to argue joint and several liability at length to the jury, and the argument is going to go something like this: *If you find Mr. Frey or Mr. Farnsworth negligent even if it's only two percent, and the judgment, say, is five hundred thousand, then the police officer is going to have to pay the entire judgment*, and that is not fair. And what the jury is going to be asked to do is either compromise on the negligence or come in with a zero percent negligence finding on Frey and Farnsworth or to reduce the judgment because of the joint and several liability.

"I would also point out to the Court that that paragraph is not true. And the reason it's not true is that Frey and Farnsworth or the Town of Pinedale will not have to pay the entire judgment in any event because all three party defendants to this lawsuit are insured.

"And I would request that the Court instruct the jury there is insurance in this case, if the Court is going to instruct on joint and several liability. It's a question of law." [3] (Emphasis added.)

No motion in limine was then made or other objection taken to final argument when one of the defendants was persuasively represented by clearly understandable and previously suggested advocacy:

"Now, the Court has instructed you that you are not to compromise a sincere conviction. If you are convinced one way by the evidence, if you have a sincere conviction, then don't compromise your principles. And the reason that we're here because of that principle is that the law in Wyoming negligence, you know, a little bit negligent is like being a little bit pregnant. There's no such thing.

"There is one Instruction, number 9, that contains one sentence that is absolutely dynamite. It says, 'when the concurring negligence of two or more persons causes an injury, each person is wholly liable to the plaintiff regardless of their relative degree to which each contributes to the injury.' That doesn't sound too dangerous, does it? What it means, ladies and gentlemen, is that if you find either Frey or Farnsworth negligent one percent and Pat Caton 99 percent, then Frey and Farnsworth and the Town can be made to pay the entire amount of damage that you found. *For instance, if you find five hundred thousand damages and one percent negligent on the part of Officer Frey, the Town can be made not to pay five thousand dollars, it can be made to pay the whole amount.* Five hundred thousand dollars. And by this I'm not suggesting that five hundred thousand dollars is even a figure you should consider in this case.

3. The court prophetically and dispositively observed:

"The objection is denied for the following reasons: First of all, the record should show that the Court is in full and complete agreement with the plaintiff's argument. However, the Court believes the status of Wyoming law at this time, even though archaic and wrong, is as stated in that Instruction. It's a part of the Pattern Instructions, and I think it's about to be changed by the Wyoming Legislature, but nonetheless, that's the law and the Court's going to give it. All right. That's been taken care of."

"Plaintiff's economist, Doctor Evenson, had six charts here. He can show you where the loss is anywhere from four hundred eighty-nine thousand up to nine hundred thousand dollars, and I'm sure if we gave him additional time and money that he could prepare six more charts showing a range anywhere from zero up to five hundred thousand dollars. We'll rely on your own good common sense to determine what the damages are in this case if, in fact, you do find there is some negligence.

"There is in this case also another effect of finding a little bit negligent which, as far as I'm concerned and my clients are concerned, is even more important. Now, the crime doctor from Florida does not have to take compensation of a police officer. He can do other things for a living. He's a good writer and he makes money from doing that. Win Farnsworth and Jim Frey do not do that. Their living and their livelihood and their professions and their careers are law enforcement." (Emphasis added.)

With available insurance coverages from which defenses were undoubtedly being funded, this statement of who would pay, or the intrinsic emotional argument of career risk of the police officers is neither within the ambit of § 1–1–109 or § 1–1–114, or facially true. I cannot read the intent or content to permit and approve statutory attribution of payment responsibility as authority to misstate financial obligations to the jury. It should not be a statutory license to lie.

However, in the absence of trial objection, I specially concur.